MARY ANN HICKEY *vs.* COMMISSIONER OF PUBLIC
WELFARE.

No. 94-P-157.

Middlesex. January 13, 1995. - March 16, 1995.

Present: KASS, JACOBS, & PORADA, JJ.

*Administrative Law*, Judicial review. *Housing. Public Welfare*, Depart-
ment of Public Welfare, Emergency assistance payments. *Department
of Public Welfare.*

The record of a hearing before the Department of Public Welfare resulting
in a denial by the department of Emergency Assistance benefits showed
. that the applicant had not demonstrated, as required by applicable reg-
ulations, that there was "no feasible alternative housing" to the motel
room accommodations she sought: a Superior Court judge properly dis-
missed the applicant's claim for review under G. L. c. 30A, where she
determined that the department had acted lawfully in denying benefits.
[263-264]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 15, 1992.

The case was heard by *Elizabeth Butler*, J., on motions for
summary judgment.

*Richard Pattison* for the plaintiff.

*Scott M. Davis*, Assistant Attorney General, for the Com-
missioner of Public Welfare.

KASS. J. Under 42 U.S.C. § 606(e) (1988) and G. L. c.
18, § 2(D), the Department of Public Welfare has authority
to provide financial assistance for emergency temporary shel-
ter to persons who are indigent, homeless, or in imminent
danger of becoming homeless. Such benefits are known as
Emergency Assistance or EA. Mary Ann Hickey had been
receiving EA on and off from 1985 to 1989, a period during
which she and her daughter frequently lived in motels. Be-
ginning July, 1989, Hickey lived steadily in motels and for a

year received EA so to do. Her appeal concerns denial by the department — after hearing — of EA benefits applied for on October 4, 1991. Acting under G. L. c. 30A, § 14, a judge of the Superior Court reviewed the administrative agency action on cross motions for summary judgment. The judge determined that the agency had acted in accordance with law and dismissed Hickey's complaint. We affirm.

Hickey and her daughter (currently a student at University of Massachusetts) are afflicted with severe formaldehyde sensitivity. They suffer allergic reactions to chemicals that are ingredients of ordinary products such as hair spray, nail polish, shampoo, tobacco smoke, laundry detergents, soaps, perfumes, and newsprint. Hickey's sensitivity appears to have become severe in 1984. Motels have been the accommodation in which she repeatedly found comfort. At the time she applied for renewal of EA in 1991, Hickey had been living at a Day's Inn in Framingham. She had earlier sojourned at the University Motel in Hadley, but felt obliged to leave it to avoid the unhealthful effect of a painting project the management was undertaking. In November, 1991, the Framingham Day's Inn closed for extensive rehabilitation, and Hickey moved to a place called the Red Roof Inn, also in Framingham.

To obtain EA, applicants are required to verify that they meet "categorical and financial eligibility factors." 106 Code Mass. Regs. § 301.410 (1987). More precisely, Hickey needed to establish that (1) she was homeless because of medical reasons, 106 Code Mass. Regs. § 309.040(A)(1)(b)(1)(e) (1991); (2) she lacked feasible alternative housing, 106 Code Mass. Regs. § 309.040(A)(1)(b) (1991); and (3) she needed money, 106 Code Mass. Regs. § 304.250 (1991). As to the medical issues, Hickey supported her application with a physician's letter, written a year earlier, that stated Hickey and her daughter had formaldehyde sensitivity and needed to live in a "self-controlled environment," away from main roads or places producing fumes that would be toxic to them. How motels, of all places, particularly located on highways, satis-

fied that requirement is an abiding mystery of the case, but one that does not need to be unravelled to decide it.

Hickey's allergy had kept her out of work since 1984. She and her daughter appear to have lived mainly on Supplementary Security Income (SSI) and Social Security Disability Income (SSDI), and, as related, periodic EA. For purposes of determining whether Hickey was eligible for EA, income from SSI and SSDI did not count. 106 Code Mass. Regs. § 304.250(A) (1991). Her needs were such that she obtained additional financial assistance from a network of clergy organized by a minister from Lexington. Those cash infusions the donors sought to characterize as loans, because loans do not count as income. 106 Code Mass. Regs. § 304.250(V) (1990). To qualify as loans, however, there needed to be a document, signed by the borrower and expressing the borrower's intent to repay. *Ibid.* Not only was Hickey unable to furnish the department with any paper of that sort, but a clergyman acting as a spokesman for his colleagues provided a letter from which it could reasonably be inferred that repayment was no more than a fond wish, and that the cash payments were gifts to someone whose need had touched their hearts. A gift could also be exempt from an EA applicant's income, 106 Code Mass. Regs. § 304.250(AA) (1990), if restricted to a specific purpose or provided for a need specified in 106 Code Mass. Regs. § 304.510 (1989). Hickey proffered to the department no documentation specifying how the cash grants from the clergy were to be used.

Following the department's initial denial of EA benefits on November 25, 1991, at the field office level, Hickey claimed a hearing before a welfare appeals referee. 106 Code Mass. Regs. § 309.070 (1991).[1] The welfare appeals referee determined on April 15, 1992, that Hickey had neither verified her sources of income, nor verified that she was homeless within the meaning of the regulations. Reading the agency record and appeals referee decision induces a reaction that many of the reasons stated for denying benefits rely on an

---

[1] In the agency proceedings described in this opinion, Hickey was represented by counsel.

exceptionally crabbed analysis of the evidence. For example, it was not particularly illuminating for the welfare appeals referee to have found that the move from the Day's Inn to the Red Roof Inn had not been compelled by medical necessity (thus failing to meet a regulatory criterion). To be sure, but Hickey had left the Day's Inn because it had closed. The relevant question was whether her medical condition, which was of long standing, justified the intervention of EA at all.

Quite properly, however, the Superior Court judge who heard and carefully considered the action under G. L. c. 30A, § 14, observed the narrow scope of judicial review under that statute. If there is substantial evidence to support the agency decision, it shall stand, *Retirement Bd. of Brookline* v. *Contributory Retirement Appeal Bd.*, 33 Mass. App. Ct. 478, 480 (1992), and in judging whether there is substantial evidence, a court does not make credibility evaluations or different choices about how the evidence adds up. *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.*, 386 Mass. 414, 420-421 (1982). *Pyramid Co. of Hadley* v. *Architectural Barriers Bd.*, 403 Mass. 126, 130 (1988). Of course a reviewing court may set aside or modify a decision that is arbitrary or capricious or an abuse of discretion, G. L. c. 30A, § 14(7)(g), but deference is owed the specialized knowledge of the agency. G. L. c. 30A, § 14(7). *Seagram Distillers Co.* v. *Alcoholic Bevs. Control Commn.*, 401 Mass. 713, 721 (1988). Cella, Administrative Law & Practice § 1576 (1986). See *Selectmen of Marion* v. *Labor Relations Commn.*, 7 Mass. App. Ct. 360, 362 (1979).

Here the evidentiary determinations were negative, i.e., that Hickey's submissions on the medical, fiscal, and homelessness issues were insufficient. While Hickey's somewhat terse and dated doctor's letter, coupled with more definitive findings made in 1988 by a United States administrative law judge in a decision — favorable to Hickey — concerning disability benefits, would support a finding of special medical need, that evidence did not compel it. The evidence could be — and was — evaluated by the department as insufficiently

precise and as stale. Hickey's claim on the department's resources had promise of being sizeable, and the department fairly could reject as inadequate a verification of her health statement that was not current and that did not spell out the details of her condition and the means by which that condition might be accommodated. Similarly, the financial evidence would have supported a finding of the necessary indigence, but it did not compel it. The precise dollar amounts provided by the clergy were not stated. From its self-initiated investigation, the department had learned that there had been a cessation for some period of time of SSI payments to Hickey because of income from another source. Did that refer to the money provided by the clergy or was there something else? Were the donations restricted as the regulations required, if they were not to be counted, and, if so, on what terms? As Hickey offered no evidence tending to answer those questions, the department, again, was entitled to decide that the applicant's economic ground for EA had not been established.[2]

Absent from the decision of the welfare appeals referee is any direct discussion of the most solid ground for the department's denial of EA benefits in this case, a ground much remarked upon by the Superior Court judge. We think the principle of appellate review, that a correct decision may be sustained on appeal on any sound basis, see *Doeblin* v. *Tinkham Dev. Corp.*, 7 Mass. App. Ct. 720, 722 (1979), is equally applicable to review of administrative agency action by a judge of the Superior Court. The most convincing basis for the agency's decision here is the failure of Hickey to make a persuasive showing that no other housing solutions were available. "Emergency assistance," as the title of the program unmistakably announces, is designed to cope with

---

[2]The judge analyzed the status of the money from the clergy solely on the basis of the initial description of that money as loans. She did not consider whether the clergy money was noncountable (as income under the regulations) donations because, so the judge thought, the issue had not been raised before the agency. The claim of alternative status had, however, been put to the welfare appeals referee in a memorandum filed on Hickey's behalf.

sudden, unexpected, and serious situations on an interim basis. That is the sort of condition contemplated by the word "emergency." American Heritage Dictionary 602 (3d ed. 1992). An applicant for EA who meets the medical and financial tests must still demonstrate that there "is no feasible alternative housing." 106 Code Mass. Regs. § 309.040(A)(2)(a) (1991). The applicant for EA, while in temporary emergency shelter such as a motel, must "make all reasonable efforts to obtain permanent housing . . . (and) meet at least weekly with the person assigned to assist in the search for permanent housing . . . (and) at a minimum engage in housing search . . . activities four. days per week." 106 Code Mass. Regs. § 309.040(A)(2)(h) (1991).

The Superior Court judge observed that over an eight-year span, Hickey was able to inhabit to her satisfaction eight different motels. During that period she had not accepted any alternative shelter. The judge remarked that it was hard to credit Hickey's claim of unavailability of any alternatives over so long a period of time, especially as roadside motels in Massachusetts, New Jersey, and Pennsylvania had met Hickey's criteria of liveability. Nor is Hickey's predicament, as she describes it, an emergency, in the sense of being sudden and unexpected. Rather, her situation is a chronic one. There lies the itch so far as EA is concerned. Hickey's may be a difficult situation, but it is ongoing and not appropriate for invocation of emergency measures. Her remedy lies in a concerted search, with department assistance that appears to be available, for shelter as nontoxic as a roadside motel room.

In her brief on appeal, Hickey adverts to various errors in the summary of the uncontested facts (based on the administrative record on review) by the Superior Court judge in the course of what we regard as a highly competent memorandum of decision. Hickey's catalog of failings harp on such matters as a failure to distinguish clearly betwen SSI and SSDI and whether Hickey ever said that motels were a satisfactory place to live (she did not). None of the mistakes

mentioned deals with the fundamentals of the case, and we do not regard them as consequential.

*Judgment affirmed.*