ALICE ARNONE *vs.* COMMISSIONER of the
DEPARTMENT of SOCIAL SERVICES.[1]

No. 95-P-1619.

Middlesex. January 29, 1997. - June 24, 1997.

Present: BROWN, KASS, & LAURENCE, JJ.

*Administrative Law,* Substantial evidence. *Evidence,* Administrative proceed-
ing, Hearsay. *Department of Social Services.*

No substantial evidence supported the determination of an administrative hear-
ing officer of the Department of Social Services that there was reasonable
cause to believe that a day care teacher had emotionally maltreated a child
in her care such as would support a report of emotional injury to the child
under G. L. c. 119, § 51A. [34-37]

CIVIL ACTION commenced in the Superior Court Department on
November 7, 1994.

The case was heard by *David M. Roseman,* J.

*Brailey E. Newton* for the plaintiff.

*Elizabeth A. Keliher* for the Department of Social Services.

KASS, J. An administrative hearing officer of the Department
of Social Services (DSS) determined after hearing that there
was reasonable cause to believe that Alice Arnone, a day care
teacher, had emotionally maltreated a child in her care. DSS
thereupon supported a report under G. L. c. 119, § 51A, ascrib-
ing to Arnone emotional injury of the child in question. See
G. L. c. 119, § 51B. Upon judicial review under G. L. c. 30A,
§ 14, a judge of the Superior Court concluded that there was
substantial evidence supporting the administrative agency order
and affirmed it. We do not think the agency action was so sup-
ported and reverse the judgment.

---

[1]The complaint also names as a defendant the executive director of the
plaintiff's former employer. Trial proceedings, however, were limited to
administrative agency review under G. L. c. 30A. There was no judgment
against the executive director and he is not a party to the appeal.

There is no claim of violation of constitutional provision, overreaching of statutory authority, error of law, or unlawful procedure. See G. L. c. 30A, § 14(7)(a)-(d). The focus of review, therefore, is whether substantial evidence supported the agency decision, and, if it did, the agency decision shall stand. *Tenneco, Inc.* v. *Commissioner of Rev.*, 401 Mass. 380, 383 (1987). *Hickey* v. *Commissioner of Pub. Welfare*, 38 Mass. App. Ct. 259, 262 (1995). Substantial evidence, as a matter of statutory definition, is "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6), as inserted by St. 1954, c. 681, § 1. That the record contains some evidence from which a rational mind might draw an inference in support of the agency conclusion does not dispose of the reviewing court's inquiry. *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981). Consideration of whether an agency decision is supported by substantial evidence is on the entire administrative record and "take[s] into account whatever in the record fairly detracts from [the evidence's] weight." *Ibid. Pyfrom* v. *Commissioner of Pub. Welfare*, 39 Mass. App. Ct. 621, 624-625 (1996). *Salaam* v. *Commissioner of Transitional Assistance, post* 38 (1997). At the same time, a court gives due weight to the experience and specialized competence of the agency. *Flint* v. *Commissioner of Pub. Welfare*, 412 Mass. 416, 420 (1992). The approach is one of judicial deference and restraint, but not abdication. *Fafard* v. *Conservation Commn. of Reading*, 41 Mass. App. Ct. 565, 572 (1996).

With those principles in mind, we turn to the administrative record,[2] in which there was evidence of the following. On March 2, 1994, DSS received a § 51A report of an incident of sexual abuse by Arnone involving a four year old boy, whom we shall call Alan. The child attended a day care center at which Arnone worked as a teacher. A DSS social worker who was assigned to the case reported that she had been told

---

[2]The record returned by DSS did not include a written or tape transcript of the administrative fair hearing. Under G. L. c. 30A, § 14(4), it is the responsibility of the agency to file in the Superior Court, by way of answer, unless otherwise agreed by the parties, a complete record of the administrative proceedings. As defined by 110 Code Mass. Regs. § 10.25 (1994), the record "consist[s] of the documents and testimony accepted in[] evidence, as well as all pleadings, notices and decisions." It was not, as the government suggests, the responsibility of Arnone to include in the record appendix a copy of the transcript of testimony at the fair hearing.

by Alan's mother that Arnone had touched and hurt his "gigi" (penis). Alan also talked to his mother about a blue car, a ball, and a knife. Alan's mother also said to the investigator that for three days after his "gigi" was hurt the child complained about going to the bathroom because it would hurt.

A teacher at the day care center, who was asked by Alan's mother to question him, reported him to the investigator as saying that Arnone had put a ball in his "gigi" and made it hurt. Alan told an interviewer from SAIN (Sexual Abuse Investigation Network) that the teacher "just cut my 'gigi' with a knife" and put a "tiny ball in." In another version, the child has Arnone taking his pants off, ripping his "gigi," and putting it inside of a bottle. When the interviewer asked Alan whether it was a bottle or a ball he answered, "Remember, you saw her do it." The interviewer reminded Alan that she was not there and asked if anyone else had been. Alan first said "no," then said it had happened in the circle room and that other children had been there, but then that the incident had occurred in the bathroom and no one else was there. It was good to lie, Alan told the SAIN interviewer, explaining that it was good because "he didn't do it on purpose."

A physician who examined Alan found no marks on his penis, no evidence of sexual abuse or urinary tract infection, a possible condition the physician considered because of the reported difficulty in urinating. There was evidence that Arnone sometimes spoke harshly to children at the day care center, and she had once been reprimanded for treating children too roughly, in the physical sense, when they had disobeyed her.

To support a report for emotional maltreatment, DSS must have reasonable cause to believe that a child incurred serious emotional injury at the hands of a caretaker. See G. L. c. 119, § 51B, and 110 Code Mass. Regs. § 4.32(2) (1993). "Serious emotional injury" is "an impairment to or disorder of the intellectual or psychological capacity of a child as evidenced by observable and substantial reduction in the child's ability to function within normal range of performance and behavior." 110 Code Mass. Regs. § 2.00 (1987). The evidence

before the fair hearing officer consisted of multilevel hearsay[3] about a report, told three times, by a four year old that his teacher had cut or cut off his penis and put a ball in it or put it in a bottle. Manifestly that had not occurred, as the boy's penis, on examination, was securely attached, unmarred and unscarred. Confronted with inescapable evidence that the incident had not occurred as reported by the child, the DSS investigator concluded that there was not evidence to support the § 51A complaint of sexual abuse. The investigator, a social worker with no special training in child psychology — at least so far as appears in the record — retreated to a determination that the teacher had inflicted emotional injury. In support of that conclusion, the DSS investigator pointed to the mother's report that Alan did not want to go to the bathroom for three days, although he did go.

In *Sinclair* v. *Director of the Div. of Employment Sec.*, 331 Mass. 101, 103 (1954), the court held that evidence that was exclusively hearsay could not constitute substantial evidence before an administrative agency. Since then Massachusetts cases have consistently danced around whether that principle continues to apply in the wake of the adoption, also in 1954, of the State Administrative Procedure Act, G. L. c. 30A.[4] See *Olde Towne Liquor Store, Inc.* v. *Alcoholic Bevs. Control Commn.*, 372 Mass. 152, 154 (1977); *United Food Corp.* v. *Alcoholic Bevs. Control Commn.*, 375 Mass. 238, 244 (1978); *LaPointe* v. *License Bd. of Worcester*, 389 Mass. 454, 459 (1983); *Burlington Package Liquors, Inc.* v. *Alcoholic Bevs. Control Commn.*, 7 Mass. App. Ct. 186, 190 (1979); *Boylston-Washington, Inc.* v. *Alcoholic Bevs. Control Commn.*, 8 Mass. App. Ct. 396, 398-399 (1979). In all those post-*Sinclair* cases, there was some primary evidence to give substantiality to the evidence before the agency, thus rendering the "hearsay only" question academic.

Here, the agency determination has overtones of a finding of criminal conduct and results in reports — to the Office for

[3]Things that the child said to the mother, a teacher, or an interviewer, who, in turn, told an investigator who testified at the fair hearing.

[4]Professor Cella, in his treatise on administrative law and practice, expressed some puzzlement that courts should have raised the issue whether the Administrative Procedure Act altered the *Sinclair* principle, commonly called the legal residuum standard, as the draftsmen of the act had written an article in which they said that the act did not purport to modify the *Sinclair* standard. Cella, Administrative Law & Procedure § 251 (1986).

Children and the teacher's employer — likely to cast a shadow over the person concerned indefinitely. In such cases, there is a powerful basis for deciding that the substantial evidence that leads to so grave a result needs to rest on something more solid than exclusively hearsay — in particular the hearsay statements of very young children, which have been recognized as requiring independent corroborative evidence. See *Commonwealth* v. *Colin C.*, 419 Mass. 54, 65-66 (1994). This is a way of saying that "reasonable persons are [not] accustomed to rely" on such evidence in the conduct of so serious an affair. G. L. c. 30A, § 11(2), as inserted by St. 1954, c. 681, § 1.

Once again, however, it is not necessary to decide the "exclusively hearsay" question. We have seen that the hearsay evidence admitted at the fair hearing leads to the conclusion that what the child said about sexual abuse did not happen. Other than the story that the DSS investigator could not credit, there was no evidence of any harm Arnone did to the child. The lack of evidence of sexual abuse cannot form the basis for the conclusion that Arnone inflicted serious emotional injury. The opinion of the DSS investigator that something must have happened, combined with hearsay that the child expressed reluctance to urinate, does not attain a level of substantiality to support a finding of emotional maltreatment by Arnone.

The judgment of the Superior Court affirming the administrative decision of DSS to support a report of emotional maltreatment against Arnone is reversed. A judgment shall be entered vacating DSS's decision and ordering DSS to notify the Office for Children, Arnone's employer at the time of the incident, and any other person, public or private, to whom DSS conveyed information of its decision, that the report of emotional maltreatment has not been supported.

*So ordered.*