Hinkle, J.
Under G.L.c. 30A, §14, plaintiff Dale DeLillo appeals the decision of the defendant Department of Social Services (the “Department” or “DSS”) to support a report of neglect of his minor son, Matthew. The plaintiff has moved for judgment on the pleadings. After a hearing and review of the administrative record, the Fair Hearing transcript and the parties’ briefs and reply briefs, for the reasons set forth below, plaintiffs motion is ALLOWED.

BACKGROUND

The following facts are taken from the administrative record.
Plaintiff is the father of Matthew Moore-DeLillo. Plaintiff is also the ex-husband of Margaret Moore. Under the terms of their divorce agreement dated February 12, 1996, plaintiff and Ms. Moore share joint legal custody of Matthew, born on May 29, 1992. Ms. Moore has physical custody of Matthew, and plaintiff *69 has full and unfettered visitation rights. Although the divorce was ultimately based upon no-fault grounds, it appears from the record that the divorce proceedings were highly contentious.
Since the divorce, four DSS investigations involving plaintiff have been instituted. The first DSS investigation occurred shortly after the divorce proceedings were concluded in 1996. A G.L.c. 119, §51A report asserted that plaintiff had shown neglect by refusing to provide health coverage for Matthew. This report was found to be “unsupported” by DSS, since Matthew was never denied any treatment.
A second DSS investigation soon followed within the same period, based on another filed G.L.c. 119, §51A report. The report stated that plaintiff showed neglect by having a dirty apartment that was inadequate for child visitation. This report was found to be “unsupported” by DSS, because the father was still in the process of moving into the apartment and renovating it for purposes of accommodating Matthew’s visits.
A third DSS investigation took place in March 1997, due to a filed G.L.c. 119, §51A report alleging abuse of Matthew. The report stated that Matthew had refused to discuss a “secret” he had with his father. Ultimately, the report was found to be “unsupported” by DSS, since the “secret" merely involved father and son pretending to have the secret identities of Batman and Robin. Additionally, at the outset of this third investigation, Ms. Moore filed a motion to suspend visitations while the DSS investigation was pending; this motion was allowed by Probate Court on March 21, 1997. Upon the issuance of an unsupported finding six weeks later, plaintiff sought and received an immediate restoration of visitations with Matthew.
The appeal arises from the fourth DSS investigation into a G.L.c. 119, §51A report filed on January 28, 1999. The report was filed by a mandated reporter, Matthew’s most recent therapist, who stated that Ms. Moore claimed that Matthew has been exposed to a “long history of domestic violence” between herself and plaintiff. The reporter also was told that plaintiff “has hit [Matthew] on many occasions on the back of his head and buttocks.” It is unclear from the record as to who made this allegation to the reporter-^-Ms. Moore or Matthew. Lastly, the reporter states that plaintiff is demeaning to the child, through name-calling such as “stupid kid.”
The DSS screener who took the report contacted Ms. Moore by telephone. Ms. Moore stated there was a “history of domestic violence” that lasted until 1996, when Ms. Moore took a restraining order that had “recently” been removed when the Probate Court instituted visitations. Ms. Moore reiterated how Matthew told her plaintiff had hit him hard on the back and stated that Matthew frequently complained that plaintiff hit him in the back of his head during visits. Based on the conversation with Ms. Moore, the screener also stated that Matthew cries and wants to call his mother to go home, that the father is controlling and does not allow Matthew to call his mother, and that the father demeans Matthew by calling him “stupid” and making references to him being overweight.
In accordance with G.L.c. 119, §5IB, Donna LaSpina was assigned to investigate the allegations made by the reporter. Ms. LaSpina contacted Ms. Moore by telephone on February 1, 1999, and went to her home to interview her and Matthew later that day. During the visit, Ms. Moore made allegations to Ms. LaSpina of events surrounding her past relationship with plaintiff, before and after their divorce. Ms. Moore reiterated the allegations regarding the hits to Matthew’s head, back and buttocks. Ms. Moore also added for the first time that she had witnessed plaintiff hitting Matthew with an open hand to the back of the head in her own home. She also stated to Ms. LaSpina that Matthew was experiencing stress-related stomachaches and having struggles at school.
Ms. LaSpina then interviewed Matthew alone in his room at his mother’s place of residence. Matthew told Ms. LaSpina that visits with his father were “not so good.” Matthew said that his father recently threw a piece of candy at him because he had not cleaned up adequately. Matthew told Ms. LaSpina that his father had hit him on his back one time with an open hand. Matthew said that plaintiff had hit him on the head more than one time and on the buttocks once. He told Ms. LaSpina that his father also called him names, such as “stupid,” “chubby,” and “fatty." He stated that his father says he is joking, yet the name calling makes him feel badly. Matthew was not asked about the severity of the alleged hitting incidents or about his alleged stomachaches.
Matthew also mentioned to Ms. LaSpina that he worried about his parents’ fighting. Additionally, he told her of a dream where his father threw him and his mother out a window. Matthew also told her of a dream where a rat was coming towards him and his mother did not do anything. Matthew told Ms. LaSpina that he wanted his father to be nice and not slap him in the head. He also stated that he sometimes wanted to call his mother during visits with his father, but his father would not allow this. Ms. LaSpina told Matthew that she would speak to plaintiff about this, and Matthew’s response was that his father would “lie,” because his father does not want to get into trouble. Ms. LaSpina then asked Matthew if he knew the difference between truth and lies. Matthew stated that telling the truth is saying what really happened, and he stated that he was telling the truth.
On February 4, 1999, plaintiff came to the DSS office to speak with Ms. LaSpina after she called to arrange an appointment with him. Plaintiff told her that he did not hit Matthew, that he has a close relationship with his son, that Ms. Moore has a history of making false accusations against plaintiff whenever she is being taken to court and that she was scheduled *70 to appear on contempt charges during the following week.
On February 4, 1999, Ms. LaSpina contacted Matthew's school counselor by telephone. The school counselor stated Matthew was having problems in school and said that Ms. Moore had alleged that Matthew had been hit by his father. Matthew had not mentioned any such allegations to the school on his own. The school counselor also told Ms. LaSpina that plaintiff kept in touch with the school and wanted to be notified of meetings, report cards and the like. That same day, Ms. LaSpina also contacted Dr. Singer, Matthew’s pediatrician. Dr. Singer said that Matthew had never said anything about being hit by the father, but that Ms. Moore has told Dr. Singer that Matthew was uncomfortable with his father during visits. Dr. Singer reported nothing to Ms. LaSpina about Matthew suffering from stomachaches.
Later on February 4, 1999, Ms. LaSpina attempted to speak with Matthew’s therapist, but she and the therapist were unable to make contact. Ms. LaSpina also contacted the Everett police, who reported that plaintiff “had a domestic in 94-95 and a situation in 98.” After discussions with her supervisor, Ms. LaSpina entered her decision supporting the neglect finding, dated February 4, 1999.
On February 5, 1999, Ms. Moore appeared in Malden District Court and secured an abuse prevention order restraining plaintiff from contacting Matthew. On February 8, 1999, in a contempt hearing instituted by plaintiff, the Middlesex Probate Court resumed the original visitation schedule and also ordered Ms. Moore to effectuate the child’s name change without any further delay.[1] On February 18, 1999, the abuse prevention order was vacated by Malden District Court, and the Middlesex Probate Court ordered Ms. Moore to pay plaintiffs legal fees, arising from the contempt hearing, in the amount of $1,150.00. On August 5, 1999, the Probate Court allowed plaintiff and Matthew to have vacation visitation from August 6, 1999 through August 15, 1999.
A Fair Hearing on this matter was conducted on September 2, 1999. Barbara Boustani, the hearing officer, issued her decision on April 4, 2000, supporting the allegation of neglect and the Department’s decision to support the allegation, as well as the decision to list plaintiff on its registry of alleged perpetrators.
Statutory and Regulatory Framework
G.L.c. 119, §51A provides that certain mandated reporters listed in the statute who have “reasonable cause to believe” that a child has been physically or emotionally abused “shall immediately report such condition to the Department ...” Upon receiving the §51A report, G.L.c. 119, §51B requires that the Department conduct a prompt investigation, “if appropriate . . . determin[e] . . . the nature, extent and cause or causes of the injuries [and] the identity of the person or persons responsible therefore ...”
When the §5IB investigation is completed, the Department must decide whether the allegations in the §51A report are “supported” or “unsupported.” 110 C.M.R. §4.32. “Support of the report means that the Department has reasonable cause to believe that an incident ... of abuse or neglect by a caretaker did occur.” Id. at §4.32(2). “Reasonable cause to believe” that an incident of child abuse or neglect by a caretaker has occurred means “a collection of facts, knowledge or observations which tend to support or are consistent with the allegations, and when viewed in the light of the surrounding circumstances and credibility of persons providing information, lead one to conclude that a child has been abused or neglected." Id. Support of the report does not necessarily mean that the Department has made any finding with regard to the perpetrator of the abuse. It simply means that there is reasonable cause to believe that some caretaker inflicted abuse or neglect on the child. Id.
A party aggrieved by the Department’s decision to support a §51A report may request an administrative hearing to challenge the decision. 110 C.M.R. §10.06(8). If the decision is supported, a Fair Hearing will be scheduled. At that hearing, the Department’s decision will be reversed if the challenging party proves by a preponderance of the evidence that the Department's decision or procedural actions were not in conformity with its policies or regulations or that the Department acted without a reasonable basis or in an unreasonable manner which resulted in substantial prejudice to the challenging party. 110 C.M.R. §§10.06(8)(c) and 10.23.
Under 110 C.M.R. §4.36, the Department maintains a Registry of Alleged Perpetrators. If “the allegation of child abuse or neglect has been supported and referred to the District Attorney pursuant to §51B(4) and there is substantial evidence indicating [the identity] of the alleged perpetrator . . . responsible for the abuse or neglect, the alleged perpetrator’s name shall be added to the Registry of Alleged Perpetrators.” Id. at §4.33. The hearing officer may only reverse the Department’s decision if the challenging party demonstrates that the Department did not comply with its own policies and regulations or that there was a lack of substantial evidence that the challenging party was responsible for the alleged abuse or neglect. 110 C.M.R. §10.06(9).

DISCUSSION

The focus of this review is whether the Department’s decision to support the finding of plaintiffs neglect of Matthew and to list plaintiff on the Registry was supported by substantial evidence and thus whether the agency decision should stand. Under G.L.c. 30A, §1(6), “substantial evidence” is defined as “such evidence as a reasonable mind might accept as adequate to support a conclusion.” *71 Edward E. v. Department of Social Services, 42 Mass.App.Ct. 478, 479-80 (1997). That the record contains some evidence from which a reasonable mind might draw an inference in support of the agency conclusion does not dispose of the reviewing court’s inquiry. Arnone v. Comm’r of the Department of Social Services, 43 Mass.App.Ct. 33, 34 (1997). The Court’s determination must be made “upon consideration of the entire record. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.” Edward E., 42 Mass.App.Ct. at 480-81.
This Court shall make its determination upon consideration of the entire record, or such portions of the record as may be cited by the parties. The court shall give due weight to the experience, technical competence and specialized knowledge of the Department, as well as to the discretionary authority conferred upon it. G.L.c. 30A, §-14(7). Although recognizing the Department’s specialized competence, the court does not relinquish its responsibility to provide judicial review of the agency’s decision. Arnone, supra.
In reviewing a Department decision on appeal, this Court is confined to the administrative record unless procedural irregularities are alleged. G.L.c. 30A, § 14(5). The Court may not substitute its own judgment for that of the agency, “even though the court would justifiably have made a different choice had the matter been before it de novo.” South Worcester County Reg’l Vocational Sch. Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420 (1982). Nor may the Court disturb the credibility determinations of the hearing officer or her weighing of the evidence. Guarino v. Director of the Division of Employment Security, 393 Mass. 89, 92 (1984).
Plaintiff argues that the evidence relied upon by the hearing officer consists almost entirely of multi-level hearsay and therefore cannot constitute substantial evidence. While hearsay can form a permissible basis for an agency’s decision, such hearsay must be “reliable.” Edward E., 42 Mass.App.Ct. at 480-81. Here, after reviewing the administrative record, I find and rule that some of the evidence presented and relied upon was unreliable hearsay and thereby cannot constitute substantial evidence.
First, at the Fair Hearing, DSS Supervisor Jill Turk presented the Department’s case by quoting from and paraphrasing Ms. LaSpina’s report and supporting documentation. Ms. Turk had no personal knowledge of the incidents in question, beyond her consultation with Ms. LaSpina before the supported finding was entered. Ms. Turk referred to Ms. LaSpina’s report, which contained references to the DSS screener’s comments about what was stated to him by the mandated reporter. The statements made to the mandated reporter were purportedly based on allegations made by Ms. Moore during Matthew’s therapy session. The DSS screener also made reference to a telephone call he made to Ms. Moore, who confirmed to him what she had told the mandated reporter.
The record indicates that the Fair Hearing officer did not hear direct testimony from Ms. LaSpina, Ms. Moore or Matthew. Instead, the hearing officer relied upon the testimony of the Department’s Supervisor, who based her findings on a report prepared by Ms. LaSpina — a report containing statements made by Ms. Moore to a mandated reporter, a Department screener and Ms. LaSpina. The report also contained statements made by Matthew to Ms. LaSpina.
While the court may not disturb any credibility determinations of the hearing officer, it is clear that the report relied upon by the hearing officer contained statements that were never evaluated or tested in terms of reliability or credibility. See Guarino, 393 Mass. at 92; Edward E., 42 Mass.App.Ct. at 480-81. Furthermore, the context surrounding these allegations was never inquired into or explored further by Ms. LaSpina in her report. This is troubling in light of the statutory definition of “reasonable cause” required of the Department in order to support a finding of abuse or neglect and in light of the contentious probate court history between plaintiff and his former wife.
“Reasonable cause” includes “facts, knowledge or observations” which are to be “viewed in the light of the surrounding circumstances and credibility of persons providing information.” 110 C.M.R. §4.32(2). The surrounding circumstances and credibility issues surrounding Matthew and Ms. Moore were not adequately assessed by Ms. LaSpina. Thus, her report is unreliable and should not have been predominately relied upon by the Department Supervisor who testified before the hearing officer.
The reliability of the hearsay presented within the report was also important because of the inconsistent and contradictory statements made by Ms. Moore and Matthew to Ms. LaSpina. For example, Ms. Moore told Ms. LaSpina about a history of spousal abuse claims dating back to 1991, before addressing the allegations made to her by Matthew, the main focus of this Department investigation. Although Matthew stated to Ms. LaSpina that he worried that his father might hurt his mother, he also stated that he had never seen his parents hit each other, that his father had never threatened to hurt Matthew or his mother and that he was not afraid of his father. Although these statements made by Ms. Moore and Matthew are not entirely consistent, Ms. LaSpina did not explore this incongruity to assess the reliability and truthfulness of the allegations. Thus, I find and rule that the Department’s decision to support the allegation of neglect and to list the plaintiff on the registry of alleged perpetrators was not supported by substantial evidence.
*72 I also find that the allegations of neglect of Matthew by his father are not supported by substantial evidence. Neglect is defined as:
. . . failure by a caretaker, either deliberately or through negligence or inability, to take those actions necessary to provide a child with minimally adequate food, clothing, shelter, medical care, supervision, emotional stability and growth, or other essential care. 110 C.M.R. §2.00.
As noted above, Matthew disclosed to Ms. LaSpina that his father had thrown candy at him once, had hit him on the back and buttocks once, and had hit him on the head more than once. He also told her that his father called him names such as “stupid” and “chubby.” Initially, these allegations came under an abuse and neglect report called in by the §51A mandated reporter. However, after the §5 IB investigation, only the neglect report was supported by the Department. The abuse report was found to be unsupported because the allegations were deemed not sufficiently serious since there was no evidence of injury to Matthew.
In the absence of an injury to Matthew, the Department alternatively found that plaintiff had neglected Matthew by using inappropriate parenting techniques that had negatively influenced the child. The Department Supervisor cited Matthew’s difficulty in concentrating, his bad dreams and his stomachaches. These parenting techniques were claimed by the Department to give them reasonable cause to believe that Matthew was provided by his father with a less than minimally adequate atmosphere of emotional stability and growth.
However, the record does not show that the Department attempted to determine the nature, severity or cause of Matthew’s school problems or that those problems were linked to the parenting techniques of plaintiff rather than Ms. Moore. Furthermore, at the Fair Hearing, plaintiff directly testified that he had never hit Matthew and that any physical contact with Matthew came in the form of wrestling and playing, in a context where derogatory names were tossed back and forth as playful banter.
The record also points to an incident when plaintiff first received visitation, when plaintiff tapped Matthew’s cheeks and said, “Snap out of it.” Ms. Moore reported this incident to the Guardian Ad Litem. However, this incident occurred in the presence of a court ordered monitor, who neither mentioned the incident to anyone nor told plaintiff that it had been inappropriate. The record shows ample correspondence and findings by the G.A.L. that plaintiff deserved full and unfettered rights to visitation with Matthew, and that any attempt to block visitation by Ms. Moore was unjustified. The G.A.L. findings provide no reason to question whether plaintiff is capable of providing Matthew with emotional stability and growth.
In issuing my Probate Court on several occasions has intervened on plaintiffs behalf: (a) by vacating a restraining order issued against plaintiff so that visitation could take place; (b) by awarding attorneys fees to plaintiff in a contempt action against Ms. Moore; (c) by concluding that Ms. Moore willfully refused to execute a name change for the child as required by their separation agreement; and (d) by awarding plaintiff vacation visitation. Thus, nothing in the record suggests that the Probate Court has had any reason to question the propriety of plaintiffs parenting techniques or his ability to provide Matthew with emotional stability and growth.
While Matthew has stated that he wants his father to be nicer, he has also stated that he likes visiting his father and doing such things with him as playing on the computer, attending a train show, visiting with his father’s relatives, playing, wrestling and going to the park. This information, in view of the record as a whole, does not show that plaintiff has failed to provide Matthew with minimally adequate levels of emotional stability and growth as required under the definition of neglect. 110 C.M.R. 2.00.
I thus find and rule that there is not substantial evidence to support the finding of neglect, because the evidence before me is unreliable in key areas. I also find and rule that plaintiff s conduct does not constitute neglect as defined in 110 C.M.R. 2.00. Cf. Minnehan v. Dept. of Social Services, 1999 WL 706653, Mass.Super., 10 Mass. L. Rptr. 364 (1999) (evidence that son made claims to mother and repeated them in an interview was insufficient, since DSS investigation relied upon information designed to “support” his allegations and failed to explore contrary information, causing the hearing to consist of conclusory, sometimes totem-pole hearsay).
Plaintiff also claims under G.L.c. 30A, §14(7)(c), (f), and (g) that the Department decision to support the §51A report was (a) unwarranted by facts found on the record, (b) based upon an error of law and (c) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law. In light of my other conclusions, I decline at this time to address those claims.

ORDER

For the foregoing reasons, it is hereby ordered that the plaintiffs motion for judgment on the pleadings is ALLOWED. This matter is REMANDED to the Department for further proceedings consistent herewith.

 At this time, the terms of visitation had become an ongoing source of disagreement between plaintiff and Ms. Moore. While no finding of contempt was made on the issue of visitation, the court confirmed the original visitation schedule entered on February 12, 1996. Additionally, under the terms of the divorce agreement, the child’s name was to have been changed from Matthew D. Moore to Matthew D. Moore DeLillo no later than September 1, 1996. This had not occurred as of the date of the contempt hearing.