Connolly, J.

INTRODUCTION

This case came on for hearing on April 8, 2002 on the plaintiff, Susan Wolverton’s Motion for Judgment on the Pleadings and the defendant, Department of Social Services’ (“DSS”) Cross Motion for Judgment on the Pleadings. Susan Wolverton seeks judicial review of an administrative decision of DSS that the 51A report of abuse concerning her minor daughter, Avery Wolverton, had been supported. DSS cross moves for judgment on the pleadings.

STANDARD OF REVIEW

The court on a G.L.c. 30A, §14 complaint “may set aside the decision of an administrative agency if it is not supported by substantial evidence.” Cobble v. Commissioner of the Department of Social Services, 430 Mass. 385, 390 (1999). The substantial evidence test is defined as follows:
The focus of the review, therefore, is whether substantial evidence supported the agency decision, and, if it did, the agency decision shall stand . . . Substantial evidence, as a matter of statutory definition is ‘such evidence as a reasonable mind might accept as adequate to support a conclusion’ . . . That the record contains some evidence from which a rational mind might draw an inference in support of the agency conclusion does not dispose of the reviewing court’s inquiry . . . Consideration of whether an agency decision is supported by substantial evidence is on the entire administrative record and takes into account whatever in the record fairly detracts from the evidence’s weight. . . At the same time, a court gives due weight to the experience and specialized competence of the agency.. . The approach is one of judicial deference and restraint, but not abdication.
Arnone v. Commissioner of the Department of Social Services, 43 Mass.App.Ct. 33, 34 (1997).
Or, as stated by the Supreme Judicial Court in Cobble, supra, at 390:
[T]hat the record may contain some evidence from which a rational mind might draw an inference in support of the agency’s decision does not dispose of our inquiry . . . Rather, to determine whether an agency’s decision is supported by substantial evidence, we examine the entirety of the administrative record and take into account whatever in the record fairly detracts from the supporting evidence’s weight.
“Substantial evidence” is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6). “The substantial evidence standard is thus fairly characterized as a test of rational probability: an agency’s conclusion will fail judicial scrutiny ‘if the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary’.. . Thus conceived, the substantial evidence test accords an appropriate degree of judicial deference to administrative decisions, ensuring that an agency’s judgment on questions of fact will enjoy the benefit of the doubt in close cases, but requiring reversal by a reviewing court if the cumulative weight of the evidence tends substantially toward opposite inferences.” Cobble, supra, at 390-91.

FACTS

This case arises from an incident that allegedly occurred on January 3, 2000. However, a bit of history is necessary first.
Susan and Richard Wolverton are the married mother and father to Parker Wolverton (born 04/22/89), Avery Wolverton (born 09/20/90), and Wyatt Wolverton (born 01/11/93). The family lives as a unit in their own home in Winthrop, Massachusetts. Parker Wolverton and Wyatt Wolverton are the natural born children of their mother and father. Avery was adopted at age 2Vi from an orphanage in China. Avery was involved in the incident on January 3, 2000, which is the subject of this case.
Avery, as a newborn, was placed in an orphanage in China, and lived there until she was adopted by Susan and Richard Wolverton. Three weeks after birth, Aveiy was left at a police station, and subsequently placed in the orphanage. At the orphanage, Avery was subjected to sensoiy deprivation and con *554 fined to a crib. In the spring of 1993, she was brought to the United States by Mr. Wolverton. Mrs. Wolverton had remained at home to care for Avery’s then 41/2-year-old brother, Parker. Avery has a congenital defect in her right hand, namely she does not have any fingers in her right hand. Although it is not currently known the extent to which Avery had been abused or neglected in the orphanage, the condition of the orphanage suggested to a DSS worker that Avery was subjected to an extensive amount of abuse and neglect during her years at the orphanage. She was cared for by the women at the orphanage. The children in the orphanage were kept in beds and not held, and all the workers were women in authority. Mrs. Wolverton indicated that she has had a problem with Avery obeying her, but she does not act like that with Mr. Wolverton. A serious problem with Avery lying to people developed prior to January 3, 2000.
A neuropsychological assessment of Avery was accomplished in July 13, 2000 by Judith A. Harding, Ph.D. Therein, Dr. Harding describes Avery as an anxious, insecure and sad little child who does not want to do wrong. “Projectivés reveal differences in the way in which Avery relates to parents, i.e., mother sets the limits and organizes her life and father is someone with whom she plays. However, she becomes angry when demands and limits are placed on her. This appears due, at least in part, to the early restrictions, neglect and trauma in which she felt out of control.” Lying was not uncommon.
The incident involved in this case allegedly occurred on January 3, 2000. Avery was very small on said date, weighting approximately 50 pounds. On January 4, 2000, the DSS received a report alleging physical abuse of Avery by her mother, Susan Wolverton. Avery told her teachers that her mother dragged her upstairs by her hair and kicked her in her face with her shoe on. The teachers, being mandated reporters, reported the same to the DSS. Ms. Kathleen M. Cavanaugh was assigned by the DSS as the investigator, and she first went to the Wolverton’s home on January 5, 2000 at approximately 5:00 p.m.
Susan Wolverton was informed by Ms. Cavanaugh of what Avery had reported to the teachers, namely that Avery stated that her mother pulled her up the stairs by her hair and that her mother kicked her in the face with her shoe on. Avery had a mark on her face approximately 2 V2" long. Avery told Ms. Cavanaugh that the mark could have come from when her mother was dragging her up the stairs by her hair and then kicked her in the face.
Susan Wolverton indicated to Ms. Cavanaugh-that on January 3, 2000 all of her three children were home. The children were all playing on the stairs and acting rather rambunctious. She yelled at the children to stop, and Parker and Wyatt immediately dispersed. Avery, who had a long standing history of oppositional behaviors towards her mother, refused to and just stared her mother down. She told Avery to stop staring at her and to get off the stairs. Mrs. Wolverton grabbed Avery by the back of her shirt and brought her up the stairs with Avery in a backwards position. At the top of the stairs Mrs. Wolverton then gave Avery the inside of her unshod foot, pushing Avery towards her room. Mrs. Wolverton indicated that she may have grabbed a bit of hair when she brought Avery upstairs.
Ms. Cavanaugh determined from Avery’s school that there were never any concerns regarding physical or mental abuse. She contacted Dr. Doris Wong, a pediatrician for all of the Wolverton children, and Dr. Wong indicated that she never had any concern for abuse of the children. Avery attended school since kindergarten at the Parkway Christian Academy. The person who reported the situation was Avery’s teacher, Lori Proulx. Ms. Cavanaugh never discussed the matter with her. Ms. Cavanaugh, prior to completion of her investigation, referred the matter to the Suffolk County District Attorney’s office. The District Attorney sought criminal complaints, which were issued on the basis that Avery stated that she had been kicked in her face. Ms. Cavanaugh of the DSS found the report of child abuse to be supported.
Susan Wolverton appealed from the January 12, 2000 decision of the DSS to support a report of alleged physical abuse pursuant to G.L.c. 119, §51A. A Fair Hearing under 110 CMR 10.06(8) was held on November 2 and 20, 2000 before Felicia R. Suggs, a Hearing Officer. The complete transcript of both days of the hearing are a part of the record in this case.
At the request of the plaintiffs counsel, Ms. Cavanaugh was present at the second day of the hearing on November 20, 2000. At said hearing Ms. Cavanaugh indicated that when she first visited the Wolverton home on January 5, 2000 she only saw the mark on Avery’s face. Ms. Cavanaugh determined that the Wolverton family never had any previous involvement with the DSS. Ms. Cavanaugh further stated that the mark on her face had not occurred in physical abuse but that she ”believe[d] the child was physically abused because she was dragged up the stairs by her hair." (Administrative Record of November 20, 2000, Volume II, p. 65.) Also, at said hearing, the DSS Area Program Manager, Ms. Gerralyn Garguilo, conceded on behalf of the DSS that the mark on Avery’s face probably occurred as a result of a rug burn or something other than being kicked with a shod foot. (Administrative Record of November 20, 2000, Volume II, p. 44.) In addition, at the hearing Ms. Cavanaugh did not know if the dragging by the collar meant that Avery was being dragged on the floor. (Administrative Record of November 20, 2000, Volume II, p. 89.) When Ms. Cavanaugh used the word dragging in her report and in her testimony she meant “that the mother was— forcefully had the child by the back, including her hair *555 and collar, and was dragging her so that the child was not moving on her own accord up the stairs.” (Administrative Record of November 20, 2000, Volume II, p. 89.) Moreover, Ms. Cavanaugh did not feel the child was kicked with a shoe. (Administrative Record of November 20, 2000, Volume II, p. 45.) Ms. Cavanaugh conceded that Susan Wolverton informed her that she had a discipline problem with this child and that during this incident, when she got to the top of the stairs and she put the child in the room, she used the word kick, but she placed her foot and pushed the child into her room with her foot, with the inside of her instep. (Administrative Record of November 20, 2000, Volume II, p. 52.)
It was conceded at the November 20, 2000 hearing, by the DSS that the mark (“rug burn mark”) on Aveiy was not an indication of abuse (Administrative Record of November 20,2000, Volume II, p. 44), and that there was no evidence that Avery was kicked in her face by Ms. Wolverton’s shod foot as she first reported to her teacher. There was simply no evidence of any physical abuse after Ms. Cavanaugh checked with Dr. Wong and the other “Collaterals.” (Administrative Record of November 20, 2000, Volume II, p. 28-29.) "Collaterals” are persons who would be expected to come into contact with Aveiy (i.e., teacher, doctor). Finally, it had been earlier erroneously noted that the Wolvertons had previous involvement with DSS. By the time of the hearing, it was conceded by the DSS that there was no previous involvement with DSS by the Wolverton family.
Accordingly, what the DSS is left with to support its 51A report (and its obvious premature referral of this case to the Suffolk County District Attorney’s office for prosecution before its investigation was completed) is the alleged dragging of Avery up some six steps in the stairway by the back of her collar, and the push-kick of her mother with the side of her unshod foot towards Avery’s room. Some of the strands of Avery’s hair may have been in Mrs. Wolverton’s hand when she grabbed the back of Avery’s collar. Avery never left her feet during the dragging incident. Mrs. Wolverton brought Aveiy to her room because of her willful disobedience of her request to get off the stairs.
The DSS adopted the position at the hearing that: (1) there was no physical injury sustained by Avery; (2) contraiy to Avery’s report, Avery was not kicked in her face; (3) contraiy to Avery’s report, she was not dragged up the stairs by her hair; and, (4) while there was evidence that Mrs. Wolverton occasionally disciplined Avery by hitting her on her hand in the past without leaving any mark, this did not constitute abuse. As such, what the DSS is left with is the claim that Mrs. Wolverton pulled or dragged Avery up some six steps and used the inside of her unshod foot to kick or push her into her room. The DSS did not claim at the hearing that Mrs. Wolverton had caused physical injuiy, but merely that her action created a substantial risk of physical injury. Therefore, in summary, the question for the DSS to have decided was whether the pulling or dragging of Avery, by the collar of her jersey with some strands of hair also being grabbed, up six stairs and the using of the inside of her unshod foot to kick or push her into her room created a substantial risk for physical injury to Avery so as to constitute abuse, and hence support the finding of abuse.

DISCUSSION

The definition of “abuse” for purposes of this case is contained in 110 CMR 2.00. It is as follows: “Abuse means the non-accidental commission of any act by a caretaker upon a child under age 18 which ... creates a substantial risk of physical . . . injury.” 110 CMR 2.00. “Physical abuse” injury is further defined as, inter alia, “soft tissue swelling or skin bruising depending upon such factors as the child’s age, circumstances under which the injury occurred, and the number and location of the bruises.”
There obviously was no physical injury from the pulling or dragging of Avery up five or six steps and pushing or kicking her into her room with the side of an unshod foot. The DSS obviously determined, as indicated on the record, that Avery had fabricated the story about being kicked in her face, and the story about being pulled up the stairs by her hair only.
The DSS worker, Ms. Cavanaugh, in her 5 IB supporting to 51A states that Avery told her that her mother dragged her up the stairs. At the hearing on November 20, 2000, Ms. Cavanaugh indicated she did not know whether this meant dragging Avery with her body on the stairs, nor whether any part of Avery’s body lay on the floor as she was being dragged. Ms. Cavanaugh did not inquire concerning it. The only evidence on this issue is from Ms. Wolverton. In response to Avery’s defiant behavior and refusal to go to her room, Mrs. Wolverton took Avery, who weighed approximately 50 pounds, by her school jumper and dragged her in an upright position with most of her weight against Mrs. Wolverton’s body. Only Avery’s shoe-clad feet dragged on the stairs to her room.
Therefore, the question for the Court is whether there is substantial evidence in the record to support the DSS’s report of abuse in this case. To make this determination, this Court must also “examine the entirety of the administrative record and to take into account whatever in the record fairly detracts from the supporting evidence’s weight.” Cobble, supra, at 390. Here, this Court is facing significant fabrications by Avery, which are and were recognized as such by the DSS. In spite of those fabrications, the DSS still insisted in supporting its report of abuse, by claiming the mother dragged Avery up some six steps without even ascertaining or attempting to ascertain just what the word “dragging” meant by Aveiy.
This Court can see no evidentiary support for the department’s decision to support the report of abuse. “[T]he substantial evidence accords an appropriate *556 degree of judicial deference to administrative decisions, ensuring that an agency’s judgment on questions of fact will enjoy the benefit of the doubt in close cases, but requiring reversal by a reviewing court if the cumulative weight of the evidence tends substantially toward opposite inferences.” Cobble, supra, at 391. “The approach is one of judicial deference and restraint, but not abdication.” Arnone, supra, at 34.
This is not a close case by any stretch of the imagination. It appears to this Court to be a forlorn attempt by the DSS to justify in some way its unjustifiable and premature referral of this case to the District Attorney’s office. The finding by the DSS that the report was supported in this case was a tragic error causing great harm to many persons. This Court has seen no abuse whatsoever in the record in this case. It has read the entire record four times. This Court sees the great love of a mother and father for their handicapped and adopted minor daughter, Avery. They are extending great effort so that Avery may live a full and fine life.

ORDER

The plaintiff, Susan Wolverton’s Motion for Judgment on the Pleadings is ALLOWED and the defendant, Department of Social Services’ Cross Motion for Judgment on the Pleadings is DENIED.
It is ORDERED that judgment shall enter vacating the DSS’s decision to support a report of abuse against Susan Wolverton, and it is ORDERED that the DSS notify the plaintiff, Susan Wolverton, the Office for Children, Susan Wolverton’s employer at the time of the incident, and any other person, public or private, to whom DSS conveyed information of its decision, that the report of abuse on her minor daughter, Avery Wolverton, has not been supported.