Troy, Paul E., J.
This matter came before the court on Plaintiffs, Austin Nichols & Co., Inc.’s (“Austin Nichols”) and Pernod Ricard USA, LLC’s (“Pernod Ricard”) Motion to Vacate the Alcoholic Beverages Control Commission’s Decision and for Judgment on the Pleadings. The plaintiffs seek review of the Alcoholic Beverages and Control Commission’s (“ABCC”) decision pursuant to G.L.c. 30A, §14. The subject of the dispute before this court is a decision by the ABCC which ordered that Pernod Ricard is bound to sell certain liquor brands to various wholesalers pursuant to G.L.c. 138, §25E, because it continued to sell certain liquor brands to wholesalers for over a six-month period after it acquired the distribution rights to those wholesalers from Austin Nichols. The ABCC made this decision regardless of the fact that, prior to Pernod taking over Austin Nichol’s distribution rights, it had an order pending against Austin Nichols to continue its sales to the same wholesalers for the same liquor brands. The ABCC asserts that its decision was proper pursuant to the plain language of G.L.c. 138, §25E. The plaintiffs allege that the ABCC’s May 19, 2004 summary decision, ordering Pernod Ricard to continue its sales to certain wholesalers, was clear legal error, arbitrary and capricious and should be vacated. For the following reasons, the plaintiffs motion is DENIED and the ABCC’s decision is AFFIRMED.
BACKGROUND
The issues presented in this matter stem from a January 2002 order by the ABCC which dictated that Austin Nichols shall continue to ship its Wild Turkey and various Seagrams liquors to the Martignetti Co. The business relations between Austin Nichols and the Martignetti Co. trace back to Austin Nichol’s par *101 ent company, Pernod Ricard, S.A. (“Pernod S.A.”). On or around December 21, 2001, Pernod S.A. obtained control of various liquor brands from Joseph E. Seagram & Sons, Inc. Those brands included certain Wild Turkey and other Seagrams brands whose United States distribution rights were assigned by Pernod Ricard to its subsidiary, Austin Nichols. Subsequently, on December 21, 2001, Austin Nichols informed the Martignetti companies, via letter, of the transfer of control over the Seagrams brands to Pernod Ricard,,and also stated that it would no longer make sales of those brands to the various Martignetti companies, which included wholesalers Country Club, Gilman, and Carolina. The wholesalers then filed an application for relief under G.L.c. 138, §25E, and on July 17,2002, the Commission ordered Austin Nichols to continue its sales to the wholesalers. On December 4, 2002, Austin Nichols informed the ABCC that its U.S. distribution rights were transferred to its newly formed sister corporation, Pernod USA. However, Austin Nichols did not attempt to substitute Pernod USA in the proceedings concerning Austin Nichols’ pending order to ship. Therefore, while the order to ship was in place, Pernod Ricard formed Pernod USA, LLC (“Pernod USA”) which succeeded Austin Nichols as supplier and held the certificate of compliance for liquor brands sold in the Commonwealth.
On January 26, 2004, Country Club moved for Summary Decision asserting that Pernod USA made regular sales to it pursuant to G.L.c. 138, §25E, and therefore created a new obligation to sell liquor to them despite the ABCC order pending with regard to Austin Nichols. The commission orally granted Country Club’s motion on May 19, 2004, accepting the wholesaler’s argument that Pernod USA’s sales of the brands to wholesalers starting in January 2003 created a new obligation under G.L.c. 138, §25E, independent of the issue of whether or not the Austin Nichols order should be imputed to Pernod USA. The Commission reasoned that the order to ship did not compel Pernod USA’s sales because the order was directed to Austin Nichols, and that Pernod’s mistaken reliance on that order did not excuse its obligations under G.L.c. 138, §25E that arose when it sold to those wholesalers for over six months.
STANDARD
Judicial review of the Commission’s decision is governed under G.L.c. 30A, §14 to determine whether the commission’s order was an arbitrary and capricious decision or based on error of law. See G.L.c. 138, § 14(7)(c)(g). Pursuant to G.L.c. 30A, §14(7)(e), the Court’s review of the commission’s decision is limited to whether it was supported by substantial evidence, which is “such evidence as a reasonable mind might accept as adequate to support the agency’s conclusions.” Seagram Distillers Co. v. Alcoholic Beverages Control Comm’n, 401 Mass. 713, 721 (1988). The parly appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Coggin v. Massachusetts Parole Bd., 42 Mass.App.Ct. 584, 587 (1997); Merisme v. Bd. of Appeals of Motor Vehicle Liab Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989). In reviewing the agency decision, the court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Iodice v. Architectural Access Bd., 424 Mass. 370, 375-76 (1997), citing G.L.c. 30A, §14(7); Arnone v. Comm'r of the Dept. of Social Services, 43 Mass.App.Ct. 33, 34 (1997); Foxboro Harness, Inc. v. State Racing Comm'n, 42 Mass.App.Ct. 82, 87 (1997); Van Munching Co. v. Alcoholic Beverages Control Comm’n, 41 Mass.App.Ct. 308, 309 (1996); Olde Towne Liquor Store, Inc. v. Alcoholic Beverages Control Comm’n, 372 Mass. 152, 154 (1977). A court may not dispute an administrative agency’s choice between two conflicting views, even though the court would justifiably have made a different choice had the matter come before it de novo. Seagram Distillers Co. v. Alcoholic Beverages Control Comm’n, 401 Mass. 713, 721 (1988). Further, new claims may not be raised on appeal if they were not also raised at the administrative appeal. Arnoff v. Bd. of Registration in Medicine, 420 Mass. 830, 834 n.5 (1995). Further, the court considers whether or not the agency relied on substantial evidence to come to its decision. Arnone v. Comm’r of the Dept. of Social Services, 43 Mass.App.Ct. 33, 34 (1997). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. Id. Therefore, “(c)onsideration of whether an agency decision is supported by substantial evidence is on the entire administrative record, and takes into account whatever in the record fairly detracts from the evidence’s weight.” Id.
DISCUSSION
The ABCC was created in 1933 by G.L.c. 6, §43. The legislative intent in creating the ABCC is explicitly stated in the statute where it explains that “The commission shall have general supervision of the conduct of the business of manufacturing, importing, exporting, storing, transporting and selling alcoholic beverages . . .” in accordance with §25E. See G.L.c. 6, §44. This statute, which established the ABCC, was legislatively intended to “give the commission comprehensive and exclusive jurisdiction over the conduct of liquor business in the commonwealth.” See Universal Mach. Co. v. Alcoholic Beverages Control Comm’n, 301 Mass. 40 (1938). Therefore, given this clear legislative intent, it would follow that an order by the ABCC would fall within its own jurisdictional powers, separate and apart from the jurisdictional powers among the courts of this Commonwealth. For example, Mass.R.Civ.R 1 states that the rules of civil procedure govern all civil actions in the state courts, without mention of their applicability to agency decisions. Therefore, this court *102 views an order issued by an agency decision, such as the ABCC, and a civil injunction issued under the rules of civil procedure as two different concepts. For this reason, Mass.R.Civ.P. 65(d) which states that: “an injunction or restraining order ... is binding only upon the parties to the action, their officers, agreements, servants, employees and attorneys and upon those persons in active concert or participation with them who receive actual notice of the order . . .” does not apply to the imputation of an ABCC order. Therefore, the law directing the issue of whether an ABCC order to ship can be imputed to a successor shipper is more appropriately found within the case law interpreting the ABCC’s application of G.L.c. 138, §25E. For example, in Heublein, Inc. v. Capital Dist. Co., Inc., 434 Mass. 698 (2001), the Supreme Judicial Court explained that the purpose of G.L.c. 138, §25E ." . . is to prevent unreasonable interruption of supply to wholesalers in good standing. If producers and suppliers could exempt themselves from the requirements of the statute by use of intermediaries or by assigning their distribution rights to another entity, the intent of the statute would be easily defeated ..." See id at n.8.
In this Commonwealth, the relation between manufacturers or suppliers of alcoholic beverages and the wholesalers they sell their brands to are governed by G.L.c. 138, §25E, which makes it an unfair trade practice for a manufacturer or other supplier, absent good cause, to refuse to sell a brand of alcohol to a wholesaler if the manufacturer has made regular sales of that brand to the wholesaler over a six-month period. As a result of this explicit statutory requirement, the manufacturer/wholesaler relationship has become the subject of many disputes when there is a change of ownership among manufacturers, and questions then surface as to whether or not the new successor manufacturing company must continue sales to the prior manufacturer’s wholesalers with whom it had §25E obligations. The solution to such issues often depends on the nature of the new manufacturer’s acquisition of the prior manufacturer’s distribution rights, and whether or not sales by the new successor manufacturer were in fact continued over a six-month period, creating new statutory obligations.
The interpretation of §25E by the courts of this Commonwealth is that, in general, an arm’s length sale of product lines between suppliers, where the right to control the product is sold to a new supplier, does not result in a transfer of §25E obligations between the suppliers. For example, in Heublein, the successor in interest to two wine brands went to the ABCC for a determination as to whether or not it was required to sell products to a wholesaler with whom the prior manufacturers had distribution agreements. The Supreme Judicial Court held that the successor in interest was not required to continue sales to the prior manufacturer’s wholesalers, where the successor acquired the wine brands through an arms-length deal and had not sold to the prior wholesalers for a period of at least six months. Id. The Heublein court’s reasoning is supported by G.L.c. 138, §25E, and the precedent stating that “ [i] t shall be unfair trade practice and therefore unlawful for any manufacturer, wine grower . . . importer or wholesaler of any alcoholic beverages to refuse to sell, except for good cause shown, any item having a brand name to any licensed wholesaler to whom such manufacturer . . . importer . . . has made regular sales of such brand item during a period of six months preceding any refusal to sell.” See generally Pastene Wine & Spirits Co., Inc. v. Alcoholic Beverages Control Commission et at., 401 Mass. 612 (1988).
In the present case, the facts indicate that the ABCC order should be affirmed because, starting in January of 2003, when Pernod USA succeeded Austin Nichols, it supplied the wholesalers with certain liquor brands for a period of over six months. The issues brought forth by the parties as to whether or not the ABCC’s order, compelling Austin Nichols to sell, resulted in the imputation of Austin Nichols’ §25E obligations to Pernod USA is not a matter of discussion for this court where it is clear that Pernod USA made regular sales to the wholesalers for over six months. Unlike Heublein, which was not obligated to continue its sales to certain wholesalers because it was involved in an arms-length acquisition of the prior supplier’s distribution obligations, and did not continue sales on its own to the prior supplier’s wholesalers for over six months, the facts in the present case indicate that whether or not Austin Nichols’ §25E obligations are imputed to Pernod USA, Pernod USA still made sales to the wholesalers for over six months on its own. Further, where the facts indicate that Austin Nichols did not move the ABCC to substitute Pernod USA in its place for the proceedings concerning its order to sell, this seems to show that the initial order to sell was only applicable to Austin Nichols. The ABCC properly applied the plain language of G.L.c. 138 §25E in deciding that Pernod USA was bound to continue its sales to the wholesalers based on its regular sales of the brands to wholesalers for more than six months. Therefore, the issue of whether Austin Nichol’s §25E obligations were imputed to Pernod USA are not relevant where Pernod USA’s actions alone are basis of the ABCC’s decision.
ORDER
For the foregoing reasons, the Plaintiffs’ Motion for Judgment on the Pleadings is DENIED and the ABCC’s Motion for Judgment on the Pleadings is ALLOWED.