62 Mass. App. Ct. 579 (2004) 579

Gupta *v*. Deputy Director of the Division of Employment & Training.

## Ashok K. Gupta *vs*. Deputy Director of the Division of Employment & Training & another.[1]

No. 03-P-500.

Middlesex. April 13, 2004. - November 29, 2004.

Present: Perretta, Laurence, & McHugh, JJ.

*Department of Employment and Training. Administrative Law,* Judicial review, Agency's interpretation of statute, Substantial evidence. *Employment Security,* Eligibility for benefits, Misconduct by employee. *Statute,* Construction.

Where, at a hearing for unemployment compensation before the Department of Employment and Training (department), an employer failed to support its original justification for the employee's termination — a knowing violation of a company procedure — with substantial evidence, the department did not err as a matter of law in holding the employee to be ineligible for unemployment compensation based upon the very same misbehavior that had precipitated his discharge (i.e., the employee's rude and discourteous behavior toward a customer, in disregard of prior warnings, that had caused his employer a financial loss) [582-584]; further, substantial evidence supported the department's conclusion that such behavior constituted deliberate misconduct in wilful disregard of the employer's interest, thus disqualifying the employee for benefits under G. L. c. 151A, § 25(*e*)(2) [584-588].

CIVIL ACTION commenced in the Cambridge Division of the District Court Department on February 27, 2002.

The case was heard by *Robert P. Ziemian,* J.

*Kristin Wildman* for the plaintiff.

*Sheila L. York,* Assistant Attorney General, for Deputy Director of the Division of Employment & Training.

LAURENCE, J. This is an appeal pursuant to G. L. c. 151A, § 42, from a District Court decision upholding the determination of the Division of Employment and Training (DET) that the plaintiff, Ashok K. Gupta, was ineligible to collect

___

[1]Lightbridge, Inc.

unemployment compensation benefits under G. L. c. 151A, § 25(e)(2), because he had been discharged for having engaged in "deliberate misconduct in wilful disregard of [his employer's] interest." Gupta contends that (1) the DET erred as matter of law when it disqualified him for benefits based on the "deliberate misconduct" prong of § 25(e)(2), because his employer had expressly discharged him for a "work rule violation," the alternative basis for ineligibility under § 25(e)(2); and (2) even if it was proper to deny him unemployment benefits on the ground of "deliberate misconduct," the DET's decision was not supported by substantial evidence and was additionally erroneous because the review examiner used an "objective" rather than a "subjective" standard to determine his state of mind. We affirm.

*Background.*[2] Gupta, a native of India, was employed at Lightbridge, Inc. (Lightbridge), as a credit analyst from November 10, 1999, until his discharge on August 20, 2001. Lightbridge operates a telephone call center where sellers of cellular telephones (dealers) obtain credit checks on prospective customers. Gupta's responsibilities included answering calls from dealers and running credit checks. Lightbridge's customer service procedures set forth the company's expectations of its employees' behavior in handling dealer phone calls. The procedure at issue here explicitly states that "[a]ny incidences, i.e. disconnecting calls, not answering calls, unprofessional conduct while on the phone . . . or anything that causes an adverse business impact on Lightbridge, Inc. (complaint from client or agent, financial loss or client loss, etc.) may result in corrective action." Gupta, however, claimed never to have received a copy of these procedures.

Prior to his termination, Gupta had been the subject of two complaints from dealers as a result of their interactions with him. The first incident occurred on December 24, 1999. After a dealer asked Gupta to repeat himself, he replied, "[w]hat do

---

[2]The facts set forth herein derive from uncontested findings made by the DET hearing department review examiner in the December 14, 2001, decision denying Gupta unemployment benefits. Gupta appealed that decision to the DET's board of review, which denied his application for review, rendering the review examiner's decision the final decision of the DET. See G. L. c. 151A, § 41(c).

you mean I'm speaking to you in English," and disconnected the call, ignoring the dealer's request to speak with a supervisor. Gupta received a verbal warning and an "Employee Corrective Action Form" (corrective action form) in consequence of this complaint, both instructing him to find a supervisor "immediately no matter the reason" upon request by a dealer and admonishing that he would be subject to disciplinary action for "[a]ny further infractions of this or any other company policy." Gupta signed the corrective action form, acknowledging that the situation had been reviewed with him.

The second warning came on January 3, 2000, after a different dealer called Lightbridge crying and reporting that Gupta had been rude and uncooperative. Gupta was again spoken to and received another corrective action form, which noted that he had already received a verbal warning, that as an analyst he was aware that he was "responsible for providing polite, friendly and helpful customer service," and that he knew "to ask for assistance from a Lead [operator] or Supervisor." This second corrective action form stated that "[a]ny further violations of this company policy or any other company policies will result in additional disciplinary action up to and including termination." Gupta again signed the form to signify his understanding of Lightbridge's concerns and expectations.

The incident resulting in Gupta's termination occurred on August 17, 2001. While on the phone, a dealer referred to Gupta as "[y]ou stupid Indian." Gupta replied to that statement by declaring, "Hold on you idiot." He then placed the dealer on hold and attempted to locate a supervisor. Unable to find a supervisor, he returned to the call, but it had been disconnected. A short time later, the same dealer called again, but upon hearing Gupta's voice the dealer said, "Jesus," and hung up. Gupta's conduct on this occasion caused Lightbridge to suffer financial loss.

*Standard of review.* Under G. L. c. 30A, § 14, the District Court, as well as this court, is obliged to give due weight to the DET's experience, technical competence, and specialized knowledge in applying the law to the circumstances of the case, must accept findings of the DET review examiner that were supported by substantial evidence, and must affirm conclusions

582 ·                          62 Mass. App. Ct. 579 (2004)

Gupta *v.* Deputy Director of the Division of Employment & Training.

not shown to be infected by error of law. See G. L. c. 30A, § 14(7); *Keough* v. *Director of the Div. of Employment Security,* 370 Mass. 1, 3-5 (1976); *Garfield* v. *Director of the Div. of Employment Security,* 377 Mass. 94, 96 (1979). In determining whether the agency's decision was supported by substantial evidence, a reviewing court is highly deferential to the agency. *Hotchkiss* v. *State Racing Commn.,* 45 Mass. App. Ct. 684, 695 (1998). To satisfy the "substantial evidence" requirement, the agency's conclusion need not be based upon the "clear weight" of the evidence or even a preponderance of the evidence, but rather only upon reasonable evidence, that is, "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Lisbon* v. *Contributory Retirement Appeal Bd.,* 41 Mass. App. Ct. 246, 257 (1996), quoting from G. L. c. 30A, § 1(6). We have no difficulty affirming the District Court and DET determinations under those circumscribed appellate standards.

*The DET's alleged error of law.* By letter dated August 20, 2001, Lightbridge terminated Gupta's employment for his "violation of the Customer Service Procedures," referencing his rude behavior to a customer on August 17, 2001. Although the DET review examiner found that "the employer failed to present substantial and credible evidence to show that the claimant's discharge was due to a knowing violation of a reasonable and uniformly enforced policy or rule" (because he accepted Gupta's claim never to have been given a copy of those policies), he nonetheless concluded that Lightbridge had sustained its burden of producing substantial evidence establishing that Gupta had engaged in "deliberate misconduct in wilful disregard" of Lightbridge's interest. While not alleging any surprise or procedural unfairness in the DET's reaching that conclusion, Gupta argues that it was nonetheless legal error to find him ineligible for unemployment benefits based on the "deliberate misconduct" prong of G. L. c. 151A, § 25(*e*)(2),[3] when Light-

---

[3]General Laws c. 151A, § 25(*e*)(2), as amended by St. 1992, c. 26, § 19, provides in pertinent part that no employment benefits shall be paid to an individual if he or she has "left work . . . by discharge shown to the satisfaction of the commissioner by substantial and credible evidence to be attributable to deliberate misconduct in wilful disregard of the employing unit's inter-

bridge had said it had discharged him for a knowing work rule violation. We disagree.

General Laws c. 151A, § 25(*e*)(2), as amended by St. 1992, c. 26, § 19, clearly and expressly provides alternative bases for denial of unemployment benefits: either (a) where an employee's termination was the result of "deliberate misconduct in wilful disregard of the employing unit's interest," or (b) when termination resulted from "a knowing violation of a reasonable and uniformly enforced rule or policy of the employer." See *Eastern Mass. St. Ry. Co.* v. *Massachusetts Bay Transp. Authy.*, 350 Mass. 340, 343 (1966); *Massachusetts Broken Stone Co.* v. *Weston*, 430 Mass. 637, 640 (2000).

The DET correctly interpreted the inclusion of the disjunctive "or" in G. L. c. 151A, § 25(*e*)(2), to mean that Gupta would be ineligible to receive unemployment benefits if substantial and credible evidence presented by the employer established that the conduct that resulted in his discharge was *either* "deliberate misconduct" *or* a "knowing violation" of a company rule. See *Tri-County Youth Programs, Inc.* v. *Acting Deputy Director of the Div. of the Employment & Training*, 54 Mass. App. Ct. 405, 408 (2002) ("As to interpretation of statutes governing the [DET], we defer to the agency's interpretation and application of the statute within which it operates"). That interpretation is particularly apt in light of the Legislature's intent, when it promulgated the two-pronged disqualification provision in 1992, to "broaden the grounds for benefit disqualification," *Still* v. *Commissioner of the Dept. of Employment & Training*, 423 Mass. 805, 811 (1996), and its intent generally "to deny benefits to a claimant who has brought about his own unemployment through intentional disregard of standards of behavior which his employer has a right to expect." *Id.* at 810, quoting from *Garfield* v. *Director of the Div. of Employment Security*, 377 Mass. at 97.

Gupta argues (without benefit of Massachusetts authority) that the DET review examiner was legally precluded from denying him unemployment benefits because Lightbridge failed to

---

est, or to a knowing violation of a reasonable and uniformly enforced rule or policy of the employer, provided that such violation is not shown to be a result of the employee's incompetence . . . ."

support its original justification for his termination — a knowing violation of a company procedure — with substantial evidence. We deem such artificial parsing of the proceeding unmeritorious when substantial evidence in the record established that the identical acts causing his termination also constituted deliberate misconduct in wilful disregard of his employer's interest.[4] See *Goodridge* v. *Director of the Div. of Employment Security*, 375 Mass. 434, 437-438 (1978); *Boston* v. *Deputy Director of the Div. of Employment & Training*, 59 Mass. App. Ct. 225, 228-229 (2003). See also *Hickey* v. *Commissioner of Pub. Welfare*, 38 Mass. App. Ct. 259, 263 (1995) (a correct administrative agency decision may be sustained on appeal on any sound ground supported by the record). The DET did not err as matter of law in holding Gupta to be ineligible for unemployment compensation based upon the very same misbehavior that had precipitated his discharge, i.e., his rude and discourteous behavior toward a customer, in disregard of prior warnings, that caused his employer a financial loss.

*The DET's finding of "deliberate misconduct."* Gupta complains that the DET's denial of his unemployment benefits was not only unsupported by substantial evidence but also improper because the review examiner used an "objective," rather than the proper "subjective," test to determine his state of mind. Both arguments are without merit.[5]

"When a discharged worker seeks [unemployment benefits],

---

[4]Gupta cites only two Indiana and one Pennsylvania intermediate appellate court decisions to support his position, without explanation of the reasoning or policy considerations that those courts relied on, or the differing employee conduct and employer justifications there involved, or even how similar or dissimilar the applicable statutes and standards of review in those jurisdictions were vis-à-vis those of Massachusetts — a failure violative of his obligations under Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See *Still* v. *Commissioner of the Dept. of Employment & Training*, 423 Mass. at 812 n.6 (Indiana judicial interpretations of its different unemployment compensation statute are not helpful).

[5]We note that no Massachusetts authority has recognized the supposed distinction between "objective" and subjective" states of mind in this context. A person's knowledge, intent, or any other state of mind is rarely susceptible of proof by direct evidence, but rather is a matter of proof by inference from all the facts and circumstances in the case, *Starks* v. *Director of the Div. of Employment Security*, 391 Mass. 640, 643 (1984), and may rest on "findings of specific acts or omissions of the worker which adversely affect the

the issue before the board is not whether the employer was justified in discharging the claimant but whether the Legislature intended that benefits should be denied in the circumstances." *Garfield* v. *Director of the Div. of Employment Security*, 377 Mass. at 95. See *Cantres* v. *Director of the Div. of Employment Security*, 396 Mass. 226, 228 (1985); *South Cent. Rehabilitative Resources, Inc.* v. *Commissioner of the Div. of Employment & Training*, 55 Mass. App. Ct. 180, 184 (2002). The phrase "deliberate misconduct in wilful disregard of the employing unit's interest" has been interpreted to cover any "intentional conduct or inaction which the employee knew was contrary to the employer's interest." *Still* v. *Commissioner of the Dept. of Employment & Training*, 423 Mass. at 810, quoting from *Goodridge* v. *Director of the Div. of Employment Security*, 375 Mass. at 436.

The denial of benefits is dependent upon proof of "the claimant's state of mind in performing the acts that caused his discharge." *Garfield* v. *Director of the Div. of Employment Security*, 377 Mass. at 97. See *Still* v. *Commissioner of the Dept. of Employment & Training*, 423 Mass. at 810. To disqualify the employee from the receipt of benefits, the employer has the burden to present substantial evidence demonstrating both "deliberate misconduct" and "wilful disregard" of the employer's interest. *Ibid.* The employee's state of mind at the time of the misconduct is an issue in both parts of the requisite analysis. *Ibid.* In ascertaining the employee's state of mind from all the facts and circumstances in the case (see note 5, *supra*), a reviewing tribunal must focus on "the worker's knowledge of the employer's expectation, the reasonableness of that expectation and the presence of any mitigating factors." *Torres* v. *Director of the Div. of Employment Security*, 387 Mass. 776, 780 (1982), quoting from *Garfield* v. *Director of the Div. of Employment Security*, 377 Mass. at 97. In short, it must be determined whether substantial evidence supported the inferences that Gupta intended to and did disobey a direct order from Lightbridge and, if so, whether he knew or should have known that his prohibited conduct would not be

employer's interest." *Garfield* v. *Director of the Div. of Employment Security*, 377 Mass. at 99.

586            62 Mass. App. Ct. 579 (2004)

Gupta *v.* Deputy Director of the Division of Employment & Training.

tolerated. See *Torres* v. *Director of the Div. of Employment Security, supra* at 781. On this record, substantial evidence supported such inferences.

The record before the review examiner established that, by the time of the August 17 incident, Gupta had twice been reprimanded for rude and inappropriate behavior toward dealers, conduct that Lightbridge considered to be in violation of its policy that employees be invariably polite and courteous to all callers. He had received both verbal warnings and corrective action forms, each containing references to the inappropriate behavior, to proper procedure, and to punishment for future violations, which he himself signed as an acknowledgment of his understanding. Gupta admitted that he knew it was Lightbridge's policy for employees to be polite and courteous regardless of the circumstances and that if a caller became abusive, the proper action was to seek a supervisor and transfer the call. Because of Gupta's conceded knowledge, the DET properly determined that his rude remark and conduct on August 17 constituted "deliberate misconduct in wilful disregard" of Lightbridge's interests disqualifying him from unemployment benefits under G. L. c. 151A, § 25(*e*)(2).[6]

Gupta cites to the *Still* v. *Commissioner of the Dept. of Employment & Training, supra,* to support his claim that the DET did not properly weigh a mitigating factor — namely, the dealer's "ethnic slur" ("you stupid Indian") — which, he claims, must be viewed as negating his intent to engage in "deliberate misconduct." He contends that Lightbridge's expectation that he and other employees would never be rude to callers was unreasonable in a situation in which an employee is provoked by a caller's ethnic insult. He argues that his curt response to the dealer — "Hold on you idiot" — was not a

---

[6]Contrary to Gupta's misdirected argument that the examiner erroneously applied an "objective" test to determine his state of mind (see note 5, *supra*), the examiner did make findings as to what might be termed Gupta's "subjective" intent, specifically that Lightbridge had an expectation that he was never to be rude to customers, that he was aware of that expectation as a result of receiving warnings in which that policy was directly communicated to him, and that when he responded to the rude dealer with "[h]old on you idiot," he knowingly and deliberately failed to conform his conduct to that reiterated expectation.

purposeful action, but rather, as in *Still*, an unintentional, spontaneous, emotional reaction to the insult, so that he could not be found to have to possessed the requisite state of mind for which he could be disqualified from receiving unemployment benefits. Contrary to his argument, the review examiner carefully considered the dealer's language but found it insufficiently mitigating in the circumstances. Moreover, Gupta's reliance on *Still* is not only unavailing but is undermined by that case.

In *Still* v. *Commissioner of the Dept. of Employment & Training*, 423 Mass. at 807, the court considered whether a nurse, who had been discharged for obscenely swearing at a patient in violation of her employer's stated rule, could be disqualified from receiving benefits under the "knowing violations" prong of G. L. c. 151A, § 25(*e*)(2). The court determined that because the nurse's outburst was provoked by the patient's ugly racial slur after she had been performing her job under extremely stressful circumstances on that day, largely because of that specific patient, she had not "knowingly" violated the employer's rule, but had emotionally reacted on the spur of the moment without real awareness. *Id.* at 814-816. The court, however, additionally concluded that "mitigating circumstances alone will not negate a showing of [disqualifying] intent," *id.* at 815, and was careful to limit the reach of its decision by stating that "an employee who violates an employer's policy by using abusive language, with conscious awareness of the act, and its probable consequences, has committed a 'knowing' violation, regardless of circumstances or prior work history." *Ibid.* The court further observed, in language that plainly distinguishes the unique facts in *Still* from Gupta's case, that

> "if the act occurred in response to provocation, or while the employee was under extreme stress, and the employee had never committed such an act previously, a factfinder might reasonably conclude that the employee had in fact acted unintentionally. Conversely, if the employee had used abusive language previously, and had been warned of the consequences, this might indicate to the factfinder that the latest violation was intentional."

*Ibid.*

In contrast to the situation in *Still*, the employer's evidence here established that Gupta had in fact been insulted and provoked by other callers in the past but had been able to refrain from rude responses in each incident. Furthermore, as noted above, he had on at least two prior occasions engaged in rude behavior toward customers whom he perceived to be insulting and had been notified, verbally and in writing, that such behavior violated Lightbridge's policy and expectation that all employees were required to treat callers in a courteous and professional manner in all circumstances and could result in termination if repeated. Despite these prior warnings, he responded to a customer's verbal abuse during the August 17 incident with a rude remark (but also by seeking a supervisor, thereby confirming his recognition of the employer's policy). The review examiner correctly concluded that, although Gupta had been insulted by the caller, "he could easily have averted this situation by putting the caller on hold without the rude remark."

We acknowledge the possibility that there may be circumstances in which a racial or ethnic insult is so vile and provocative that, even if an employer has the right to demand superhuman restraint from the employee who is its target, the employee who responds to it in like fashion would not necessarily be deemed to have engaged in deliberate misconduct or to have acted in wilful disregard of his employer's interests. Cf. *Still* v. *Commissioner of the Dept. of Employment & Training, supra.* Compare G. L. c. 151A, § 74 (unemployment compensation statute is to be construed liberally to achieve its purpose); *Howard Bros. Mfg. Co.* v. *Director of the Div. of Employment Security,* 333 Mass. 244, 248 (1955) (general purpose of the statute is to pay benefits to "persons who are out of work . . . through no fault of their own"). This, however, is not such a case. Upon examination of the record before the review examiner, we are persuaded that the DET's denial of Gupta's unemployment benefits for having engaged in "deliberate misconduct" that disregarded (and in fact harmed) his employer's interest was amply supported by substantial evidence.

*Judgment affirmed.*