LISA MICHAUD *vs.* MARY FORCIER[1] and another.[2]

No. 09-P-392.

Plymouth. March 8, 2010. - October 5, 2010.

Present: McHUGH, MILKEY, & HANLON, JJ.

*Trust,* Nominee trust, Beneficiary, Reformation. *Gift. Fiduciary. Conversion. Executor and Administrator,* Recovery of assets.

In a civil action involving a nominee trust, a Probate and Family Court judge properly ordered the plaintiff's removal from a schedule of trust beneficiaries, where the record amply supported the judge's finding that the plaintiff had committed a breach of her fiduciary relationship to the trust settlor when the plaintiff did not inform the settlor of the need to obtain the consent of all the beneficiaries of the trust before transferring land to the plaintiff as an inter vivos gift; did not inform the settlor of the effect that the transfer would have on her estate plan; did not advise or assist the settlor in procuring her own attorney; and diverted the settlor from hiring the attorney who had previously prepared her estate plan [15-16]; further, the judge properly concluded that reformation of the trust was an appropriate remedy to correct the plaintiff's wrongdoing [16-18].

In a civil action, a Probate and Family Court judge properly ordered repayment of money that the plaintiff withdrew from the decedent's bank account, where the plaintiff had been added to the account as a matter of convenience to the decedent, and the decedent had not intended to make a gift of the bank account to the plaintiff. [18]

COMPLAINT filed in the Plymouth Division of the Probate and Family Court Department on September 20, 2006.

The case was heard by *James V. Menno,* J.

*Kevin B. Nugent* for the plaintiff.

*Brian K. Bowen* for the defendants.

McHUGH, J. As her years were advancing, Marianna Forcier (Marianna) placed her real estate in a nominee trust (trust), under the terms of which she retained a life estate in the property

---

[1]Formerly known as Mary Zaniboni.

[2]Robert Hunnefield.

and her daughter, granddaughter, and grandson were remainder beneficiaries in equal shares. Later, however, Marianna made an inter vivos conveyance of some of the real estate to her grand-daughter. A Probate and Family Court judge found that Marianna intended that conveyance to be in lieu of her granddaughter's inheritance and ordered the granddaughter's removal from the schedule of trust beneficiaries. The judge also ordered the grand-daughter to repay funds she withdrew from Marianna's bank account when Marianna died. The granddaughter appeals and we affirm.

*Background.* The probate judge found the following facts. Defendant Mary Forcier (Forcier) is Marianna's daughter. Plaintiff Lisa Michaud (Michaud) and defendant Robert Hunne-field (Hunnefield) are Forcier's children and Marianna's grand-children.

In September, 1996, Marianna hired Attorney Janet Wallace to prepare her estate plan. As part of that plan, Marianna established the trust, to which she conveyed the approximately twenty-eight acres of real estate she then owned. Marianna and one Robert Carlton were named as trustees. Forcier, Michaud, and Hunnefield were listed as beneficiaries of the trust as joint tenants with equal shares, subject to Marianna's life estate in the trust corpus. Marianna contemporaneously executed a will that provided for her probate estate to be distributed in equal shares to Forcier, Michaud, and Hunnefield. Marianna also had an annuity, the remains of which were to be distributed in equal shares to the same trio when she died.

Under the terms of the trust, the trustees had no power to deal in or with the trust property except as directed by the beneficiaries.[3] However, Marianna told no beneficiary of the trust's creation and Attorney Wallace, who retained the schedule of beneficiaries, did not record that schedule.

From 1998 to 2003, Michaud, along with her husband and four children, lived with Marianna in her two-bedroom, one-bathroom house. During this time, Marianna, who did not have a driver's license, relied on Michaud for transportation, including

---

[3]The trust could be terminated at any time by one or more beneficiaries. Upon termination, the property would be conveyed to the beneficiaries as tenants in common in proportion to their respective interests.

rides to doctor's appointments. In 2002, "motivated by her own self interest, given the crowded house, as well as her generous nature," Marianna told Michaud that she wanted to give her some land so that Michaud could build a house for her family. Michaud accepted the offer. She and Marianna jointly staked out, at least in a rough sense, what was to become Michaud's parcel. Thereafter, Michaud's husband, Joel Michaud (Joel), hired an engineer to prepare a subdivision plan, which described a parcel of 13.56 acres.[4] Joel submitted the plan, with other necessary documents, to the town planning board, of which he was a member.

Marianna relied on Michaud to contact and hire a lawyer to effect the land transfer. Before making contact with any lawyer, Michaud had access to Marianna's estate planning documents and learned of the existence and essential provisions of the trust. Instead of contacting Attorney Wallace, who she knew had handled her grandmother's estate plan, she hired Richard Murray, who had previously represented her and Joel in connection with other matters and who knew nothing of the estate plan.[5] The trial judge found that Michaud's failure to use Attorney Wallace to carry out the transfer manifested "a conscious decision on the part of . . . Michaud to thwart Marianna's original intent [regarding property division] which she knew had not changed."

After hiring Attorney Murray to effectuate the land transfer, Michaud also arranged for the trust's cotrustee, Robert Carlton, to resign, and he did so on February 20, 2003. Six days later, Marianna, as sole trustee of the trust, conveyed the parcel to Michaud for nominal consideration. The deed recited that all beneficiaries had consented to the transfer. The deed's recitation was fabricated by Michaud, the only beneficiary who knew that there was a trust and the terms it contained. Indeed, had she known of the trust and the terms it contained, Forcier would not have assented to the conveyance.

---

[4]That parcel, roughly forty-eight percent of the land Marianna owned and, thus, more than Michaud would have received upon dissolution of the trust, was the size Michaud needed in order to accommodate her desire for a forestry plan, which had certain real estate tax advantages. See G. L. c. 61, § 3.

[5]The trial judge expressly rejected Michaud's testimony that she hired Attorney Murray after Attorney Wallace said she would be too busy to see Marianna for about four months.

In April, 2004, a year after the transfer, Marianna's designated executor, David Joubert (Joubert), attended a meeting with Marianna, her annuity representative, and Michaud. At the meeting, Joubert asked Marianna whether the land she transferred to Michaud was intended as her inheritance. Marianna replied that it was. Joubert, who was unaware of the trust, told Michaud that she should take Marianna to get her will changed, and Michaud stated that she would. In July, three months later, Hunnefield asked Marianna if Michaud's parcel was in lieu of inheritance, and she said yes. He advised Marianna, who did not appreciate the difference between a trust and a will, that she needed to have her will changed to reflect her intent, and she stated that she would have Michaud or Forcier help her to do so.

Later that year, in October, Marianna broke her hip. Thereafter, she was no longer ambulatory and her physical and mental state began to deteriorate. Marianna died on May 25, 2005. Her death certificate reflects that she had suffered progressive dementia for several years.

After Marianna's death, Forcier, Hunnefield, and the attorney for Joubert, the executor, all searched unsuccessfully for Marianna's will. Michaud found it but told no one. Forcier and Hunnefield did find a passbook for a Rockland Trust bank account, and they met with Michaud to discuss what should be done with the money the account contained. After the meeting and without telling anyone, Michaud withdrew the account's entire balance of $10,979.25. Although all of the funds deposited in the account were Marianna's, Michaud's name was on the account as a matter of convenience, so that she could assist Marianna with payment of bills.

On September 20, 2006, Michaud filed a complaint in equity requesting termination of the trust, an accounting for rents,[6] and declaratory relief. On April 30, 2007, Forcier and Hunnefield filed an answer and counterclaim, setting forth claims for reformation of the schedule of beneficiaries of the trust and conversion of a bank account.

After a three-day bench trial, judgment entered on January 25, 2008. The trial judge made findings containing the facts

---

[6]It appears that Forcier moved in to Marianna's house shortly after her death.

recited above. In the end, he found that Marianna's "testamentary intent never wavered" and that she always intended to provide for her daughter and two grandchildren equally. The judge also found that Marianna's transfer of land to Michaud was intended as an advance in lieu of any inheritance she might receive by will or trust. Finally, he found that Michaud stood in a fiduciary relationship to Marianna and that Michaud breached her fiduciary duty by failing to assist Marianna in changing her estate plan after Marianna transferred the parcel to her.

Based on those findings, the judge dismissed Michaud's claims for termination of trust and accounting of rents and ruled that she had no interest in the remaining 14.42 acres held in the trust. He therefore ordered removal of Michaud from the schedule of beneficiaries and ordered her to pay $10,979.25, the amount she had withdrawn from the Rockland Trust account, to Joubert as executor of Marianna's estate.

*Discussion.* 1. *The inter vivos transfer.* On appellate review, the judge's findings of fact will not be set aside unless they are clearly erroneous. *DiGiovanni* v. *Board of Appeals of Rockport*, 19 Mass. App. Ct. 339, 343 (1985). The judge's finding that a fiduciary relationship existed between Michaud and Marianna is not clearly erroneous. "[T]he law recognizes the existence of fiduciary responsibilities arising out of . . . relationships of trust and confidence and provides a remedy against one who abuses the confidence reposed in him by another, turning it to his own advantage." *Markell* v. *Sidney B. Pfeifer Foundation, Inc.*, 9 Mass. App. Ct. 412, 443 (1980). "Whether a relationship of trust and confidence exists is a question of fact, . . . and may be found on evidence indicating that one person is in fact dependent on another's judgment in business affairs or property matters" (citations omitted). *Id.* at 444. See *Cleary* v. *Cleary*, 427 Mass. 286, 292-293 (1998) (explaining that one is not a fiduciary by virtue of being a family member, but a family member can become a fiduciary if a decedent is dependent on her in financial affairs).

Marianna's reliance on Michaud is demonstrated by testimony indicating that Michaud chose, hired, and paid a lawyer to execute the transfer of land from the trust to her, Michaud's name was on a joint bank account that contained Marianna's funds, and both before and after October, 2004, but particularly

after when she was no longer ambulatory, Marianna was deeply dependent on Michaud and Michaud knew it.

"[A] fiduciary who benefits in a transaction . . . bears the burden of establishing that the transaction did not violate his obligations." *Cleary* v. *Cleary, supra* at 295. Indeed, even if the beneficiary is simply in a "confidential" relationship and is not a "strict fiduciary," it still takes less to establish undue influence than in an ordinary case where no special relationship exists. *Id.* at 290 n.2.

When those principles are brought to bear on the judge's findings, his conclusion that Michaud breached her fiduciary relationship is amply supported by the record. Michaud owed Marianna a duty "as a fiduciary personally interested in the execution of the [land transfer] to disclose fully all adverse legal effects of the [deed] or to cause her to obtain independent legal advice before execution." *Markell* v. *Sidney B. Pfeifer Foundation, Inc.*, 9 Mass. App. Ct. at 445. The judge found that Michaud was aware of the trust and the terms of the trust, as evidenced by her request that the cotrustee resign and her fabricated statement of the beneficiaries' assent. Despite this knowledge, Michaud did not inform Marianna about the need for all the beneficiaries' consent, did not inform Marianna about the way in which the land transfer would affect her estate plan, did not advise or assist Marianna in procuring her own attorney, and in fact, actually diverted Marianna from hiring Attorney Wallace, who had previously prepared Marianna's estate plan.[7]

A court can "grant equitable relief when there has been a violation of fiduciary duty and fraud." *Demoulas* v. *Demoulas*, 428 Mass. 555, 580 (1998). Although the remedy in many cases of fraud is revocation of a trust, see, e.g., *Markell* v. *Sidney B. Pfeifer Foundation, Inc.*, 9 Mass. App. Ct. at 440-445, "[e]quitable remedies are flexible tools to be applied with the focus on fairness and justice," and "[a] court may also reform an agreement to correct wrongdoing." *Demoulas* v. *Demoulas, supra* at

---

[7]The trial judge also found that once Michaud agreed to assist Marianna in changing her estate plan, she had an express duty to effectuate the change within a reasonable time, and by failing to do so she breached her fiduciary duty to Marianna. There is sufficient evidence to support the judge's conclusion that Michaud breached her fiduciary duty even if one puts to the side her failure to assist Marianna in making the relevant changes.

580-581. In sum, "a court acting under general principles of equity jurisprudence has broad power to reform, rescind, or cancel written instruments . . . on grounds such as fraud, mistake, accident, or illegality." *Beaton* v. *Land Court*, 367 Mass. 385, 392, appeal dism'd, 423 U.S. 806 (1975).

These general principles are fully applicable to trusts. "It is well settled that a trust instrument may be reformed to conform to the settlor's intent." *Van Riper* v. *Van Riper*, 445 Mass. 1007, 1007 (2005). Most of the time, that rule is invoked to correct errors that occurred when the trust was created and produced a divergence between the settlor's intent and the terms of the trust. See, e.g., *Berman* v. *Sandler*, 379 Mass. 506, 509-510 (1980); *Simches* v. *Simches*, 423 Mass. 683, 687-688 (1996); *Walker* v. *Walker*, 433 Mass. 581, 587 (2001). But "[a] trust beneficiary can rescind or seek reformation of a transfer of a beneficial interest on the same grounds that would entitle the settlor to rescind or seek reformation of the trust itself, i.e., fraud, duress, undue influence, or mistake." 3 Scott, Fratcher & Ascher, Trusts § 14.8, at 868 (5th ed. 2007). See Restatement (Third) of Trusts § 62 & comment a (2003) ("A trust may be rescinded or reformed upon the same grounds as those upon which a transfer of property not in trust may be rescinded or reformed. . . . Where no consideration is involved in the creation of a trust, it can be rescinded or reformed upon the same grounds, such as fraud, duress, undue influence, or mistake, as those upon which a gratuitous transfer of property not in trust can be rescinded or reformed"). Cf. *Kerwin* v. *Donaghy*, 317 Mass. 559, 567-568 (1945), quoting from Scott, Trusts §§ 38, 164.1 (1939) ("Under the parol evidence rule, if the manifestation of intention of the settlor is integrated in a writing, that is, if a written instrument is adopted by [the settlor] as the complete expression of his intention, extrinsic evidence, in the absence of fraud, duress, mistake or other ground for reformation or rescission, is not admissible to contradict or vary" the written trust instrument).

The trial judge did not err in finding that the trust, will, and annuity were part of a cohesive estate plan reflecting an intent to treat the three parties equally, and that the land transfer to Michaud was intended, as she knew, to be in lieu of the interest that she would have taken when the trust was dissolved. Because

Marianna's intent was not carried out due to Michaud's breach of a fiduciary duty, the probate judge's order for reformation of the trust was proper.

2. *The bank account.* When a joint bank account is established as a matter of convenience and is not intended to constitute a completed gift, the contents of the account belong to the estate of the deceased joint tenant. *Miles* v. *Caples*, 362 Mass. 107, 114 (1972). The trial judge did not err in finding that the funds in the Rockland Trust account belonged to Marianna, that Marianna added Michaud's name to her account as a matter of convenience, and Marianna did not make the contents of the account a gift to Michaud. Accordingly, the judge properly ordered Michaud to repay the amount she withdrew from the joint account.

*Judgment affirmed.*