SUPERIOR COURT 
 
 CMFG LIFE INSURANCE COMPANY; CUNA BROKERAGE SERVICES, INC.; AND CUNA MUTUAL INSURANCE AGENCY, INC. v. EARNEST CONSULTING GROUP, LLC; COMMONWEALTH FINANCIAL CORPORATION; OM FINANCIAL GROUP, LLC; BRUCE BAUER; BROOKS BERARDI; MICHAEL BREMER; JOHN ELLIS;

 
 Docket:
 2384CV02196-BLS2
 
 
 Dates:
 May 27, 2025
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ON DEFENDANTS’ MOTIONS FOR SUMMARY JUDGMENT
 
 

 The Plaintiffs provide insurance and other financial services and products. These affiliated companies are based in Wisconsin and now do business under the tradename TruStage. Bruce Bauer, Andrew Rocket, Brooks Berardi, Michael Bremer, and John Ellis (the “Former Employees”) used to work for TruStage in various States. They resigned in August 2023 to accept employment at Earnest Consulting Group, which is owned by OM Financial Group and also affiliated with Commonwealth Financial Corporation (collectively, “ECG”), which are based in Boston, Massachusetts. TruStage and ECG compete in the field of credit union executive benefits plans and products.[1]
TruStage claims that: (I) Bauer and Roquet breached their fiduciary duty of loyalty while still working for TruStage by recruiting colleagues on the executive benefits team to move to ECG; (ii) all defendants violated the Massachusetts Uniform Trade Secrets Act, G.L. c. 93, § 42 et seq. (“MUTSA”) and the Former Employees also breached confidentiality agreements (iii) the Former Employees also violated non-solicitation agreements; and (iv) ECG aided and abetted the breaches of fiduciary duty, tortiously interfered with the Former Employees’ non-solicitation agreements, tortiously interfered with business relationships between TruStage and its customers, and engaged in unfair or deceptive trade practices in violation of G.L. c. 93A.
 
--------------------------------------------
 
[1] The parties do not distinguish among the plaintiffs in their summary judgment papers. However, TruStage explains in its complaint that CMFG Life Insurance previously employed the Former Employees, CUNA Mutual Insurance Agency is the entity through which executive benefits policies are originated, and CUNA Broker Services, Inc. (“CBSI”) was the TruStage broker-dealer. In 2002, TruStage replaced CBSI with LPL Financial, a third-party broker-dealer.
 
                                                            -1-
 
The Court will allow in part Defendants’ motions for summary judgment with respect to the claims that the Former Employees breached their non-solicitation covenants and that ECG tortiously interfered with those non-solicitation covenants. It will deny the motions in part with respect to all other claims.[2]
1. Summary Judgment Standards. The entry of summary judgment is appropriate if, “viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.” Nelson v. Salem State College, 446 Mass. 525, 530 (2006), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). “The purpose of summary judgment is to decide cases where there are no issues of material fact without the needless expense and delay of a trial followed by a directed verdict.” Correllas v. Viveiros, 410 Mass. 314, 316 (1991).
“A court must deny a motion for summary judgment if … the moving party is not entitled to judgment as  a  matter  of  law.”  Rudenauer  v.  Zafiropoulos,  445 Mass. 353, 356 (2005), quoting Golub v. Milpo, Inc., 402 Mass. 397, 400 (1988).
For example, a claim cannot be resolved on summary judgment if a material factual issue is in dispute and must be resolved at trial. See Molly A. v. Commissioner of Dept. of Mental Retardation, 69 Mass. App. Ct. 267, 284 (2007).
Similarly, even if the material facts are not in dispute, summary judgment is not appropriate where a reasonable factfinder could draw inferences or reach conclusions from those facts that would support a verdict in favor of the nonmoving party at  trial.  See  Flesner  v.  Technical  Communications  Corp.,  410 Mass. 805, 811-812 (1991) (“Where a jury can draw opposite inferences from the evidence, summary judgment is improper.”); Dennis v. Kaskel, 79 Mass.
 
--------------------------------------------
 
[2] The parties agree that it generally does not matter which State’s law applies for the purpose of addressing the common law claims. The only exception is with respect to whether the Former Employees’ non-solicitation covenants are enforceable. As explained below, the Court need not reach that issue because TruStage has not been able to muster any evidence that any customers left TruStage for ECG as a result of solicitation in violation of these covenants. The Court therefore does not need to engage in any choice-of-law analysis to decide this summary judgment motion. “Only actual conflicts between the laws of different jurisdictions must be resolved.” UBS Financial Services, Inc. v. Aliberti, 483 Mass. 396, 405 n.12 (2019), quoting Kaufman v. Richmond, 442 Mass. 1010, 1012 (2004) (rescript). “Choice of law analysis is unnecessary when that choice will not affect the outcome of the case.” Kaufman, supra.
 
                                                            -2-
 
App. Ct. 736, 741 (2011) (summary judgment may not be granted where “a reasonable jury could return a verdict for the nonmoving party”) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 [1986]).
2. Fiduciary Duty Claim. TruStage claims in count I of its corrected amended complaint that Bauer and Roquet breached a fiduciary duty of loyalty by carrying out a plan to lure TruStage’s executive benefits team to a competitor.
Bauer and Roquet argue that they did not owe TruStage any fiduciary duty of loyalty as a matter of law because they were not key employees vested with policy-making authority over the whole enterprise. The Court disagrees that only employees who play such a central role in running a business may owe the company a duty of loyalty. The evidence in the summary judgment record would support a finding at trial that Bauer and Roquet breached a duty of loyalty that they owed to at least some of the Plaintiffs. Bauer and Roquet are therefore not entitled to judgment in their favor on this claim as a matter of law.
“Whether a relationship of trust and confidence exists,” thus giving rise to a fiduciary duty, “is a question of fact, … and may be found on evidence indicating that one person is in fact dependent on another’s judgment in business affairs or property matters.” Michaud v. Forcier, 78 Mass. App. Ct. 11, 15 (2010), quoting Markell v. Sidney B. Pfeifer Foundation, Inc., 9 Mass. App. Ct. 412, 444 (1980).
Someone who represents a business entity to important customers, and in whom the entity has placed great trust and confidence, may owe a fiduciary duty to that entity even though they were never an officer, director, or high- level manager. Any employee who occupies a position of trust and confidence owes their employer a duty of loyalty. See Chelsea Industries, Inc. v. Gaffney, 389 Mass. 1, 11 (1983). For example, in the context of a law firm, a non-equity junior partner who served as acting head of a law-firm’s appellate department and “an associate responsible for a substantial case load” both owed duties of loyalty because they were entrusted with managing significant client relationships and “had access to clients and information concerning clients and therefore occupied positions of trust and confidence.” Meehan v. Shaughnessy, 404 Mass. 419, 438 (1989).
A reasonable fact finder could conclude that Bauer and Roquet occupied positions of trust and confidence in which they were trusted to lead the executive benefits team, responsible for significant client relationships, and
 
                                                            -3-
 
entrusted with important confidential information—and that they therefore owed TruStage a fiduciary duty of loyalty.
In addition, a reasonable fact finder could also conclude that the actions by Bauer and Roquet, while still employed by TruStage, to solicit their colleagues to leave as a group and start working for a competitor constituted a breach of their duty of loyalty. See Augat, Inc. v. Aegis, Inc., 409 Mass. 165, 173–175 (1991).
Bauer and Roquet are therefore not entitled to judgment in their favor as a matter of law on the claim for breach of fiduciary duty.
3. Trade Secrets and Confidential Information. TruStage claims in count V that the Former Employees breached contractual obligations not to disclose or misuse TruStage’s confidential information, and claims in count VII that all Defendants violated the Massachusetts Uniform Trade Secrets Act by misappropriating trade secrets that belong to TruStage.
Defendants argue that the total annual revenues generated by each Former Employee (as measured by gross dealer concessions, or “GDC”) and each of their total assets under management (“AUM”) is not confidential information, and in any case that disclosing this information to ECG did not violate the Former Employees’ confidentiality agreements or MUTSA. The Court will assume, without deciding, that to be correct. These arguments miss the main thrust of confidential agreement and trade secret claims.
TruStage has presented evidence that the Former Employees not only shared their bottom-line GDC and total AUM with ECG, but that they also disclosed to ECG quite detailed information showing sales figures for TruStage’s executive benefits specialists over four years broken down by product and carrier, and lists of identified clients with information about each client’s individual investments. Bauer also sent ECG a copy of TruStage’s 2022 sales incentive plan.
Based on the evidence in the summary judgment record, a reasonable fact finder could conclude that this information constituted “confidential information” as that term is defined in the Former Employees’ restrictive covenant agreements, and that the Former Employees breached their contractual obligation not to disclose any of TruStage’s confidential information. Though the contractual definition of “confidential information” excludes information about each employees’ own wages, the disclosed information goes well beyond that. And the summary judgment record would
 
                                                            -4-
 
support a finding that this information met the contractual definition of “confidential information” because it was possessed by TruStage, not reasonably ascertainable by competitors or the general public, and treated as confidential by TruStage.
Similarly, a reasonable fact finder could conclude that some or all of this information constituted a “trade secret” within the meaning of G.L. c. 93, § 42(4), and that the Defendants all “misappropriated” those trades secrets when the Former Employees disclosed it and ECG accepted it.
4. Breach of Non-Solicitation Agreements. TruStage claims in count V that the Former Employees breached contractual obligations not to solicit customers they had worked with or whose confidential information they had reviewed. The Court will assume, again without deciding, that these non-solicitation covenants are enforceable. It will nonetheless allow the Former Employees’ motion for summary judgment as to this portion of the breach of contract claim because TruStage has mustered no evidence suggesting that any client left TruStage and signed up for ECG due to any unlawful solicitation.
With the exception of one customer, TruStage has presented no evidence that any of the Former Employees solicited any TruStage client to leave the firm in violation of their non-solicitation agreements.
TruStage has identified one customer that, according to Ellis’s own testimony, appears to have been unlawfully solicited to leave TruStage by Ellis and Roquet. But Defendants have presented unrebutted evidence that this customer never placed any business with ECG.
Causation of harm or injury is an element of a claim for breach of contract. See, e.g., Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 690 (2016). An improper attempt to solicit a customer is therefore not a cognizable breach of contract if if failed to convince the customer to jump ship.
Since TruStage has mustered no evidence to establish an essential element of this claim, the Former Employees are entitled to summary judgment in their favor. See Romero v. UHS of Westwood Pembroke, Inc., 72 Mass. App. Ct. 539, 542 (2008) (affirming summary judgment on this ground). “A nonmoving party’s failure to establish an essential element of her claim ‘renders all other facts immaterial’ and mandates summary judgment in favor of the moving party.” Roman v. Trustees of Tufts College, 461 Mass. 707, 711 (2012), quoting Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991)
 
                                                            -5-
 
5. Claims Asserted Only against the ECG Defendants. TruStage asserts four other claims only against the three ECG Defendants. Count II alleges that ECG aided and abetting the purported breaches of fiduciary duty by Bauer and Roquet. Count V alleges that ECG intentionally interfered with the Former Employees’ non-solicitation agreements. Count IV asserts that ECG tortiously interfered with TruStage’s customer relationships by falsely telling customers that TruStage was abandoning the field and no longer offering or properly supporting credit union executive benefits plans and products. And Count III is a claim that ECG engaged in unfair or deceptive trade practices in violation of G.L. c. 93A, § 11.
5.1. Aiding and Abetting Breach of Fiduciary Duty. ECG is not entitled to summary judgment on the aiding and abetting claim.
The elements of the tort of aiding and abetting a breach of fiduciary duty are:
(1) some third-party breached a fiduciary duty; (2) the defendant knew of the breach; (3) the defendant actively participated in, substantially assisted in, or encouraged the breach “to the degree that he or she could not reasonably be held to have acted in good faith;” and (4) the plaintiff was injured as a result. See Arcidi v. National Ass’n of Govt. Employees, Inc. 447 Mass. 616, 623–624 (2006).
As discussed above, there are triable issues as to whether Bauer and Roquet owed and breached a duty of loyalty to TruStage. In addition, a reasonable fact finder could conclude that ECG knew of, actively participated in, substantially assisted in, and strongly encourage Bauer and Roquet to breach their duty of loyalty by soliciting team members to leave TruStage and join ECG, and that TruStage suffered economic injury as a result.
5.2. Tortious Interference with Former Employees’ Contracts. ECG is entitled to summary judgment on the claim that it intentionally interfered with the Former Employees’ contractual obligations not to solicit TruStage customers.
To prove a claim for intentional interference with contractual relations, a party must establish that: “(1) [it] had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant’s interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.” Weiler  v. PortfolioScope, Inc., 469 Mass. 75, 84 (2014), quoting G.S. Enters., Inc. v. Falmouth
Marine, Inc., 410 Mass. 262, 272 (1991).
 
                                                            -6-
 
As discussed above, TruStage has not mustered any evidence that it suffered harm due to any violation by the Former Employees of their covenants not to solicit TruStage customers. It follows that TruStage also cannot establish that ECG interfered with those contracts and thereby caused harm to TruStage.
5.3. Tortious Interference with Customer Relationships. TruStage has presented sufficient evidence to support its claim that ECG unlawfully interfered with TruStage’s customer relationships.
“The tort of intentional interference with advantageous relations protects a plaintiff's present and future economic interests from wrongful interference.” Blackstone v. Cashman, 448 Mass. 255, 259 (2007). To prove this claim, TruStage will have to show that (I) it had an advantageous relationship with its customers, (ii) ECG “knowingly induced” customers to break off their relationship with TruStage, (iii) the interference, “in addition to being intentional, was improper in motive or means,” and (iv) TruStage suffered harm as a result. Id. at 260.
It is perfectly lawful to try to lure customers away from a competitor out of “a desire for financial or competitive gain” at the competitor’s expense, so long as one does not do so “through improper motive or means.” Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 608 & 609 (2007). “[A]dvancing one’s own economic interest, by itself, is not an improper motive” for the purpose of a tortious interference claim. See Skyhook Wireless, Inc. v. Google Inc., 86 Mass. App. Ct. 611, 621 (2014); accord, e.g., Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 62 Mass. App. Ct. 34, 39 (2004).
“To demonstrate improper means,” TruStage must establish that ECG engaged in “improper conduct beyond the fact of the interference itself.” Bartle v. Berry, 80 Mass. App. Ct. 372, 380 (2011); accord United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 815–816 (1990).
But TruStage has presented evidence that ECG, acting through the Former Employees, told several TruStage clients that TruStage cut support for its executive benefits team and did not have adequate staffing and technology to services its clients. It has also presented evidence that those representations were false.
A reasonable fact finder could therefore conclude that ECG used improper means to compete for clients. See Draghetti v. Chmielewski, 416 Mass. 808, 816 (1994) (sending letter with false statement to convince third party to terminate
 
                                                            -7-
 
plaintiff’s employment was improper means); Cavicchi v. Koski, 67 Mass. App. Ct. 654, 658–659 (2006) (allegation that defendant knowingly made material misrepresentations that induced clients to discharge plaintiff stated claim for tortious interference by improper means).
5.4. Chapter 93A Claim. Finally, the Court will deny ECG’s request for summary judgment on the Chapter 93A claim because the summary judgment record is sufficient to support a conclusion that ECG committed an unfair or deceptive trade practice in violation of G.L. c. 93A, § 11, and does not compel a conclusion that the center of gravity of ECG’s alleged misconduct was somewhere outside of Massachusetts.
First, the summary judgment record is sufficient to convince a reasonable fact finder that the ECG defendants violated G.L. c. 93A.
Whether ECG made false statements about TruStage’s continued ability to service this market is in dispute. A reasonable fact finder could conclude that EG made such misrepresentations to TruStage clients, and that trying to compete for clients based on misrepresentations of fact violated c. 93A. See generally Quinlan v. Clasby, 71 Mass. App. Ct. 97, 102, rev. denied, 451 Mass. 1103 (2008) (“A negligent misrepresentation of fact may … constitute an unfair or deceptive act within the meaning of G.L. c. 93A, if the truth could have been reasonably ascertained.”); Nota Constr. Corp. v. Keyes Assocs., Inc., 45 Mass. App. Ct. 15, 16 (1998) (plausible allegations of deliberate fraud in trade or commerce state a claim under c. 93A).
The evidence that Defendants were spreading false information about TruStage’s capabilities, and that thereafter clients followed the Former Employees to ECG, could convince a reasonable fact finder to infer that at least some of those customers changed firms because of these misrepresentations. Direct evidence of departing clients’ state of mind is not required. “A person’s knowledge, intent, or any other state of mind is rarely susceptible of proof by direct evidence, but rather is a matter of proof by inference from all the facts and circumstances in the case.” Gupta v. Deputy Dir. of Div. of Emp. & Training, 62 Mass. App. Ct. 579, 585 n.5 (2004). And an inference “need only be reasonable and possible;” it does not have to be “necessary or inescapable.” Parker v. EnerNOC, Inc., 484 Mass. 128, 132 (2020), quoting Commonwealth v. Kelly, 470 Mass. 682, 693 (2015).
Second, the summary judgment record does not establish that ECG’s alleged misconduct lacks sufficient connection with Massachusetts to implicate c. 93A.
 
                                                            -8-
 
The burden of proof is on the Defendants to prove that the conduct that constitutes the allegedly unfair or deceptive act or practice did not occur primarily and substantially in Massachusetts. See G.L. c. 93A, § 11; Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 470 & n.11 (2003). “The analysis required under § 11 does not turn on any specific factors and instead involves determining whether the center of gravity of the circumstances that g[a]ve rise to the claim’ occurred here.” FTI, LLC v. Duffy, 104 Mass. App. Ct. 484, 488, review denied, 495 Mass. 1103 (2024)., quoting Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 473 (2003).
Given that ECG is based in Massachusetts, a reasonable fact finder might conclude that its alleged misconduct in violation of c. 93A was centered here.
ORDER
Defendants’ motions for summary judgment are allowed in part with respect to so much of count V of the corrected amended complaint that alleges breaches of the individual defendants’ non-solicitation agreements and with respect to the claim in count VI for tortious interference with contracts. The motions are denied in part with respect to so much of count V that alleges breaches of the individual defendants’ contractual obligations not to disclose confidential information, and with respect to the claims for breach of fiduciary duty in count I, aiding and abetting breaches of fiduciary duty in count II, violation of G.L. c. 93A, § 11, in count III, tortious interference with customer relationships in count IV, and violation of the Massachusetts Uniform Trade Secrets Act in count VII.
The session clerk shall schedule a final pre-trial conference.